UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Olufunmilayo Ajasa, | Chapter 7 |
| Debtor, | Case No. 1-10-50719-ess |
| Olufunmilayo Ajasa, | |
| Debtor and Plaintiff on behalf of himself and all others similarly situated, | Adv. Pro. No. 1-18-01122-ess |
| v. | |
| Wells Fargo Bank, N.A. | |
| Defendant. | |

**<u>BRIEF IN OPPOSITION TO WELLS FARGO BANK, N.A.'S MOTION TO DISMISS AND MOTION TO STRIKE THE CLASS ACTION ALLEGATIONS</u>**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND .................................................................................................3

ARGUMENT ........................................................................................................................5

    I.     Legal Standard .....................................................................................................5

    II.    Plaintiff Has Adequately Pled That Wells Fargo Has
            Violated the Discharge Order. .............................................................................6

           A.  *In re Kalikow* Does Not Require Dismissal Here. ...................................6

           B.  Wells Fargo Willfully Violated the Discharge Order, Consistent with *McKenzie-Gilyard.* ..............................................................................................................7

           C.  Wells Fargo's Tradeline Was Inaccurate and Highly Derogatory ........................10

    III.   Plaintiff Has Been Harmed .................................................................................12

    IV.  Plaintiff May Seek Injunctive Relief and Disgorgement on Behalf of the Class. .......14

    V.    *Bristol-Meyers* Does Not Apply to Class Actions in Bankruptcy Court .....................17

    VI.  The Court Has Subject Matter Jurisdiction to Adjudicate a
            Nationwide Class Action. ...................................................................................19

    VII.  Plaintiff May Represent Class Members Whose Accounts Were Not Sold. ...............25

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

Cases                                                                                    Pages

*Alderwoods Group, Inc. v. Garcia*,
   682 F. 3d 958 (11th Cir. 2012) ............................................... 21

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ............................................................. 5

*Bank United v. Manley*,
   273 B.R. 229 (N.D. Ala. 2001) .......................................... 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................. 5

*Bessette v. Avco Financial Services, Inc.*,
   230 F.3d 439 (1st Cir. 2000) .............................................. 23

*Bristol-Meyers Squibb Co. v. Superior Court of California*,
   137 S. Ct. 1773 (2007) ................................................... 2, 17

*Busch v. Buchman, Buchman & O'Brien Law Firm*,
   11 F.3d 1255 (5th Cir. 1994) ............................................. 18

*Calibuso v. Bank of Am. Corp.*,
   893 F. Supp. 2d 374 (E.D.N.Y. 2012) ................................. 6

*Carickhoff v. Occupational Medicine Clinics* (*In re Cal Dive Int., Inc.*),
   2018 WL 456156 (Bankr. D. Del., Jan. 16, 2018) ............... 18

*Celotex Corp. v. Rapid American Corp.* (*In re Celotex*),
   124 F.3d 619 (4th Cir. 1997) ............................................. 18

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) .............................................................. 21

*Chen–Oster v. Goldman, Sachs & Co.*,
   877 F. Supp. 2d 113 (S.D.N.Y. 2012) ............................ 6, 25

*Chenensky v. N.Y. Life Ins. Co.*,
   No. 07 Civ. 11504 (WHP), 2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011) ............... 6

*Cox v. Zale Delaware, Inc.*,
   239 F.3d 910 (2001) ........................................................... 24

*Diamond Mortgage v. Sugar*,
   913 F.2d 1233 (7th Cir. 1990) ............................................... 18

*Dodge v. Cty of Orange*,
   103 F. App'x 688 (2d Cir. 2004) ............................................ 16

*Epstein v. JPMorgan Chase & Co.*,
   No. 13 Civ. 4744 KPF, 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) .................................. 16

*Fitzhenry-Russell et al. v. Dr. Pepper Snapple Group*,
   2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ........................ 17

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
862 F. Supp. 2d 322 (S.D.N.Y. 2012)          16

*Gray v. Petroseed Co., Inc.*,
   985 F. Supp. 625 (D.S.C. 1996) ............................................. 24

*Haj v. Pfizer, Inc.*,
   2018 WL 3707561 (N.D. Ill. Aug. 3, 2018) ............................ 17

*Hosking v. TPG Capital Management (In re Hellas Telecommunications)*,
   547 B.R. 80 (S.D.N.Y. 2016) ................................................. 18

*In re Aiello*,
231 B.R. 693 (N.D. Ill. 1999) ................................................... 20

*In re Anderson*,
   Adv. Proc. No 15-08214 (RDD) (Bankr. S.D.N.Y.) ..................... 1, 10

*In re Anderson*,
   Adv. Proc. No. 15-8342 (RDD) (Bankr. S.D.N.Y.) ........................ 1

*In re Beck*,
   283 B.R. 163 (Bankr. E.D. Pa. 2002) .................................... 24

*In re Belton*,
   Adv. Proc. No. 14-08223 (RDD) (Bankr. S.D.N.Y.) ....................... 1

*In re Brizinova*,
   565 B.R. 488 (E.D.N.Y. 2017) ......................................... 22, 23

*In re Bruce*,
   Adv. Proc. No. 14-08224 (RDD) (Bankr. S.D.N.Y.) ............... 1, 6, 8, 12

*In re Cano*,
  410 B.R. 506 (S.D. Tex. 2009) ................................................................................. 20

*In re Chinese-Manufactured Drywall Products Liability Litig.*,
  2017 WL 5971622 (E.D. La. Nov. 30, 2017) ......................................................... 17

*In re Cline*,
  282 B.R. 686 (W.D. Wash. 2002)........................................................................... 24

*In re Correra*,
  589 B.R. 76 (N.D. Tex. 2018)................................................................................. 18

*In re Death Row Records, Inc.*,
  No. 06-11205, 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21, 2012)........................... 24

*In re Dental Supplies Antitrust Litig.*,
  2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ....................................................... 17

*In re Echevarria*,
  Adv. Proc. No. 14-08216 (RDD) (Bankr. S.D.N.Y.)........................................... 1, 11

*In re Enron Corp.*,
  316 B.R. 434 (Bankr. S.D.N.Y. 2004) .................................................................... 18

*In re Harris*,
  280 B.R. 876 (Bankr. S.D. Ala. 2001) ................................................................... 20

*In re Haynes*,
  Adv. Proc. No. 13-08370 (RDD) (Bankr. S.D.N.Y.)...................................... 1, 6, 11

*In re Haynes*,
  Adv. Proc. No. 13-08370 (RDD), 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014).. *passim*

*In re Kalikow*,
  602 F.3d 82 (2d Cir. 2010)........................................................................... 1, 6, 7, 23

*In re Krause*,
  414 B.R. 243 (S.D. Ohio 2009) ............................................................................. 20

*In re McKenzie-Gilyard*,
  388 B.R. 474 (Bankr. E.D.N.Y. 2007)........................................................... *passim*

*In re Nassoko*,
  405 B.R. 515 (Bankr. E.D.N.Y. 2009).................................................................... 14

*In re Noletto,*
   244 B.R. 845 (S.D. Ala. 2000) ................................................................................. 20

*In re Odenthal,*
   No. 11-23747 (RDD) (Bankr. S.D.N.Y.) ................................................. 2, 10, 11, 12

*In re Patrick,*
   344 B.R. 56 (Bankr. M.D. Pa. 2005) ....................................................................... 20

*In re Ramos*,
   2013 WL 5461859 (Bankr. S.D.N.Y. Oct. 1, 2013) ................................................ 14

*In re Rojas,*
   No. 09-07003, 2009 WL 2496807 (Bankr. S.D. Texas Aug. 12, 2009) ................... 20

*In re Russell*,
   378 B.R. 735 (Bankr. E.D.N.Y. 2007) ..................................................................... 14

*In re Sheffield,*
   281 B.R. 24 (Bankr. S.D. Ala. 2000) ....................................................................... 20

*In re Sims,*
   278 B.R. 457 (Bankr. E.D. Tenn. 2002) .................................................................. 20

*In re Torres*,
   367 B.R. 478 (Bankr. S.D.N.Y. 2007) ......................................................... 9, 10, 14

*In re World Com Inc. Securities Litig.*,
   219 F.R.D. 267 (S.D.N.Y 2003) .............................................................................. 15

*JT Moran Financial Corp. v. American Consolidated Financial
Corp.* (*In re JT Moran Financial Corp.*),
   124 B.R. 931 (S.D.N.Y. 1991) ................................................................................ 18

*Kassman v. KPMG LLP*,
   925 F. Supp. 2d 453 (S.D.N.Y. 2013) ........................................................................ 6

*LaMonica v. CEVA Group PLC* (*In re CIL Ltd.*),
   582 B.R. 46 (Bankr. S.D.N.Y. 2018) ....................................................................... 18

*Levey v. Hamilton* (*In re Teknek*),
   354 B.R. 181 (Bankr. N.D. Ill., 2006) ..................................................................... 18

*Lewis v. Casey,*
   518 U.S. 343  (1996) ................................................................................................ 16

*Lipshie v. AM Cable TV Industries* (*In re Geuga*),
    110 B.R. 638 (Bankr. E.D.N.Y. 1990) ................................................................. 17

*Murphy v. Equifax Information*,
    No. 12-CV-6409 (NGG) (VMS), 2013 WL 6562860 (Bankr. E.D.N.Y. Dec. 13, 2013) ......... 12

*NECA-IBEW Health and Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ....................................................................... 2, 15, 25

*Nissou-Rabban v. Capital One Bank (USA), N.A.*,
    285 F. Supp. 3d 1136 (S.D. Cal. 2018) ................................................................. 11

*Nordberg v. Granfinanciera, S.A.* (*In re Chase & Sanborn Corp.*),
    835 F.2d 1341 (11th Cir. 1988) ...................................................................... 18, 19

*Retirement Bd. Of Policemen's Annuity and Ben. Fund of the City of Chicago v. Bank of New York Mellon*,
    775 F.3d 154 (2d Cir 2014) ............................................................................ 15

*Robins v. Spokeo, Inc.*,
    867 F.3d 1108 (9th Cir. 2017) ......................................................................... 13

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) .............................................................................. 5

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ............................................................................ 16

*Walls* v. *Wells Fargo Bank, NA.*,
    262 B.R. 519 (Bankr. E.D. Cal. 2001) ................................................................. 23

*Winfield v. Citibank, N.A.*,
    842 F. Supp. 2d 560 (S.D.N.Y. 2012) ................................................................... 6

*Zazzali v. Swenson* (*In re DBSI, Inc.*),
    451 B.R. 373 (Bankr. D. Del., 2011) .................................................................. 18

## Statutes

11 U.S.C §§ 727, 524 and 105 ............................................................... 19, 21, 22, 23
28 U.S.C. § 157 ................................................................................... 20
28 U.S.C. § 1334(b) .............................................................................. 19
28 U.S.C. § 1334(e) .............................................................................. 20
Bankruptcy Code § 362 ........................................................................... 22
Bankruptcy Code § 524 ..................................................................... *passim*

## Rules

Fed. R. Bankr. P. 7023 ................................................................................................... 20

Federal Rule of Civil Procedure 4(e) ........................................................................... 18

Federal Rule of Civil Procedure 65 .............................................................................. 22

Rule 4(k)(1)(C) .............................................................................................................. 18

Rule 23 ............................................................................................................. 5, 6, 19, 20

## Other Authorities

Federal Practice and Procedure § 1068.1, at 727-53 (2015) ......................................... 18

Kara Bruce, The Debtor Class,
   88 Tul. L. Rev. 21 (2013) ......................................................................................... 22

Elizabeth Warren & Jay L. Westbrook, Class Actions for Post-Petition Wrongs: National Relief
Against National Creditors, Am. Bankr. Inst. J. March 2003 ....................................... 22

Plaintiff Olufunmilayo Ajasa, individually and on behalf of all others similarly situated, ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo" or "Defendant") Motion to Dismiss the Complaint (Dkt. No. 6) ("MTD") and Motion to Strike the Class Allegations (Dkt. No. 7) ("MTS").

## <u>INTRODUCTION</u>

Plaintiff's action against Wells Fargo is the latest in a series of seven class actions brought against various banks, alleging identical violations of the discharge injunction in Section 524 of the Bankruptcy Code.  As in the six actions brought prior this one,[1] the defendant, Wells Fargo, moves to dismiss the complaint and to strike the class allegations.  However, virtually all of Wells Fargo's arguments here have been made in the prior actions and rejected.  There is absolutely no reason to depart from those rulings here—there is no change in the law or the facts that would justify shielding Wells Fargo from liability where identical claims against the other banks have gone forward.

First, Wells Fargo contends that Plaintiff has not plausibly alleged various aspects of her claim.  However, Plaintiff's allegations are not only plausible, they have been sustained six times over.  As an initial matter, Wells Fargo need not be a current creditor to be bound by the discharge order and, moreover, Wells Fargo maintains a financial interest in Plaintiff's debt such that its violation of the discharge order was willful.  Plaintiffs' allegations are consistent with the Second Circuit's ruling in *In re Kalikow*, 602 F.3d 82 (2d Cir. 2010), Judge Drain's rulings in actions

---

[1] *In re Haynes*, Adv. Proc. No. 13-08370 (RDD) (Bankr. S.D.N.Y.); *In re Belton*, Adv. Proc. No. 14-08223 (RDD) (Bankr. S.D.N.Y.); *In re Bruce*, Adv. Proc. No. 14-08224 (RDD) (Bankr. S.D.N.Y.); *In re Echevarria*, Adv. Proc. No. 14-08216 (RDD) (Bankr. S.D.N.Y.); *In re Anderson*, Adv. Proc. No 15-08214 (RDD) (Bankr. S.D.N.Y.); *In re Anderson, N.A.*, Adv. Proc. No. 15-8342 (RDD) (Bankr. S.D.N.Y.).

alleging identical violations, and this Court's ruling in *In re McKenzie-Gilyard*, 388 B.R. 474 (Bankr. E.D.N.Y. 2007).

Wells Fargo also devotes a significant portion of its Motion to Dismiss to the argument that the charge off notation on Plaintiff's credit report is accurate because it is accompanied by zero balance and "transfer/sold" notations. Courts in this Circuit, including this Court, have said consistently that a charge off notation, after a discharge in bankruptcy, is inaccurate and highly detrimental to former debtors. This includes situations in which the charge off notation is accompanied by zero balance and "transfer/sold" notations. *See, e.g., In re Odenthal*, Case No. 11-23747 (RDD) (Bankr. S.D.N.Y.), Dkt. No. 30 at 7, 33-34. Thus, Plaintiff and the putative class members suffer a harm when Wells Fargo erroneously reports post-discharge that their Wells Fargo debts are charged off.

Moreover, having suffered this injury, Plaintiff has standing to pursue claims on behalf of all putative class members for other forms of injury, including injuries that are remedied by injunctive relief and disgorgement. *NECA-IBEW Health and Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). There is no requirement that the class representative must have suffered an injury identical to all other putative class members to have standing. *Id.* Rather, these are issues of commonality, typicality and adequacy that the Court will adjudicate at the class certification stage. *Id.* at 158 n.9. For the same reason, Plaintiff has standing to pursue claims on behalf of putative class members whose accounts have not been sold by Wells Fargo.

In its Motion to Strike, Wells Fargo argues that under *Bristol-Meyers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2007), this Court lacks personal jurisdiction over Wells Fargo with regard to the claims of out-of-state class members. However, the Supreme Court in *Bristol-Meyers* expressly stated that its decision *does not* apply to claims in federal court. 137

S. Ct. at 1783-84.  Moreover, bankruptcy courts have nationwide jurisdiction and nationwide service of process (rather than being bound by the jurisdictional limits of state courts) and thus all the Court need determine is whether Wells Fargo has sufficient contacts with the United States in order to be subject to personal jurisdiction in this Court.  That standard is obviously satisfied here.

Finally, Wells Fargo also argues that the Court lacks subject matter jurisdiction over a nationwide class action.  This argument has been rejected in every one of the prior six actions, most notably in *In re Haynes,* Adv. Proc. No. 13-08370 (RDD), 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014).  *Id.* at *9 (holding that the court "has the statutory power and subject matter jurisdiction to decide this nationwide class action").  There is again no reason to depart from Judge Drain's ruling in *Haynes* here.

For all of these reasons and as described further below, Plaintiff respectfully submits that Wells Fargo's motions should be denied in full.

### FACTUAL BACKGROUND

Wells Fargo attempts to collect discharged consumer debts by refusing, as a policy, to correct credit reporting to reflect that the debts were discharged in bankruptcy.  Compl. ¶ 7.  Wells Fargo's failure to update credit reports is not a matter of inadvertence; it is a willful policy of attempting to lay a trap for Plaintiff and other Class Members until the point that they need an accurate credit report, and they cannot obtain such a credit report without paying on a discharged debt.  *Id.* at ¶ 11. Wells Fargo knows that maintaining negative credit reporting despite bankruptcy discharges will pressure consumers to repay discharged debt in order to have the negative credit reporting removed from their credit reports.  *Id.* at ¶ 12.

Wells Fargo's policy increases the value of the debt when Wells Fargo sells it to third parties because third parties will pay Wells Fargo more for delinquent debts if the third parties know that Wells Fargo will not update the debtors' credit reports to list their Wells Fargo debts as

discharged in bankruptcy. *Id.* Plaintiff also alleges, upon information and belief, that Wells Fargo has a financial interest in recovering sold debt that was discharged in bankruptcy since it is entitled under its contracts with third party debt buyers to retain a percentage of the amounts recovered by Wells Fargo. *Id.* at ¶ 13. Furthermore, Wells Fargo has agreed to act as an agent for these third party debt buyers by forwarding payments received from consumers. *Id.* at ¶ 14.

Wells Fargo's refusal to update credit reports for discharged debt is both willful and with knowledge that the debt is discharged. *Id.* at ¶¶ 39-40. Wells Fargo has knowledge of the discharges because it receives notices from the bankruptcy courts, and it in fact received such notice for Plaintiff's debt. *Id.* at ¶ 39. Wells Fargo willfully refuses requests by consumers to update credit report tradelines and willfully created a policy of refusing to do so. *Id.* at ¶¶ 51-53.

Plaintiff Ajasa incurred a debt with Wells Fargo sometime before March 2008. *Id.* at ¶ 18. The debt became delinquent in March 2008 and Wells Fargo subsequently filed credit information with the credit reporting agencies noting that the debt was delinquent, eventually noting that the debt was "charged off." *Id.* at ¶¶ 19-20. On September 24, 2009, Wells Fargo sold Plaintiff's debt to third party Portfolio Recovery Associates. *Id* at ¶ 21. Ajasa sought relief in bankruptcy, filing a petition under Chapter 7 and ultimately receiving a discharge in February 2011. *Id.* at ¶¶ 22-23. The Court notified Wells Fargo of Plaintiff's discharge on February 22, 2011. *Id.* at ¶ 24. More than eight months later, Ajasa discovered that her Experian credit report still indicated that the discharged debt was "charged off," not discharged in bankruptcy. *Id.* at ¶ 25. On August 16, 2013, Plaintiff contacted Wells Fargo to notify it that the debt had been discharged in bankruptcy and to request that Wells Fargo update her credit report. *Id.* at ¶ 26. Wells Fargo refused to do so. *Id.*

Instead, as Defendant has admitted, it updated Plaintiff's tradeline to state "account sold or transferred to another lender and charged off with a $0.00 balance," exactly the kind of notation

that is both inaccurate and highly detrimental to a consumer's credit score. *Id* at ¶ 27. However, no third party debt buyer is listed anywhere on Plaintiff's credit report. Plaintiff's credit reports list the subject debt only in the name of "Wells Fargo." *Id* at ¶ 31. Wells Fargo is aware that only it can update Plaintiff's tradeline to accurately reflect that the debt was discharged in bankruptcy, but in accordance with its policy, it refused to do so. *Id*. at ¶ 32-33. Wells Fargo's willful policy of refusing to update consumer tradelines has adversely affected Plaintiff Ajasa and those in the putative class by denying them the fresh start provided by the Bankruptcy Code. *Id*. at ¶¶ 34, 48.

## ARGUMENT

### I.    Legal Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted). "The plausibility standard is not akin to a probability requirement. . . ." *Id*. (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (citations omitted). "In addressing the sufficiency of a complaint [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences . . . ." *Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir. 2013). At the pleading stage, the Court need only consider whether the complaint includes factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 556. The Complaint here adequately states a claim under this standard.

Motions to strike are governed by Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure, which provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed.R.Civ.P. 23(d)(1)(D). In this Circuit, however, "[m]otions to strike are generally looked upon with disfavor." *Chen–Oster v. Goldman, Sachs &*

*Co.,* 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quoting *Chenensky v. N.Y. Life Ins. Co.,* No. 07

Civ. 11504 (WHP), 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011)) (internal quotation marks

omitted).  A motion to strike class claims "is even more disfavored because it requires a reviewing

court to preemptively terminate the class aspects of . . .  litigation, solely on the basis of what is

alleged in the complaint and before plaintiffs are permitted to complete the discovery to which

they would otherwise be entitled on questions relevant to class certification."  *Chen–Oster,* 877 F.

Supp. 2d at 117; *Calibuso v. Bank of Am. Corp.,* 893 F. Supp. 2d 374, 383–84 (E.D.N.Y. 2012).

*See also Winfield v. Citibank, N.A.,* 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012) ("[D]istrict courts

in this Circuit have frequently found that a determination of whether the Rule 23 requirements are

met is more properly deferred to the class certification stage, where a more complete factual record

can aid the court in making this determination.").  Such a motion may only be entertained "if the

inquiry would not mirror the class certification inquiry and if resolution of the motion is clear."

*Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461-62 (S.D.N.Y. 2013).  As described further

below, Well Fargo's motion to strike the class allegations fails to meet this standard.

## II.    Plaintiff Has Adequately Pled That Wells Fargo Has Violated the Discharge Order.

### A.    *In re Kalikow* Does Not Require Dismissal Here.

Wells Fargo contends that *In re Kalikow*, 602 F.3d 82 (2d Cir. 2010), requires dismissal

here because, like the defendants in *Kalikow*, Wells Fargo is not a creditor subject to § 524.  MTD

at 7.  Wells Fargo is wrong, and defendants in the prior actions have already made this argument

or similar arguments to no avail.  *See In re Bruce*, Adv. Proc. No. 14-08224 (RDD) (Bankr.

S.D.N.Y.), Dkt. No. 48 at 10-11 (defendant's argument) and Dkt. No. 80 (motion denied); *In re*

*Haynes*, Adv. Proc. No. 13-08370 (RDD) (Bankr. S.D.N.Y.), Dkt. No. 11 at 8-12 (defendant's

argument) and Dkt. No. 63 (motion denied).

In *Kalikow,* the party who was the subject of the sanctions was never a confirmed creditor nor a party to the underlying bankruptcy. That party was a complete stranger to the confirmation proceeding. Here, in contrast, Wells Fargo is a creditor of Plaintiff. Wells Fargo was Plaintiff's original pre-petition creditor. It lent money to Plaintiff pre-petition and Plaintiff owed a debt to Wells Fargo pre-petition. Wells Fargo continues to hold a financial interest in Plaintiff's debt. Compl. ¶¶ 12-13, 29-30. Wells Fargo's debt was discharged in bankruptcy. Wells Fargo received notice of the discharge as a creditor. *Id.* at ¶ 24. Wells Fargo furnishes information on Plaintiff's debt to credit reporting agencies. Wells Fargo is the only creditor who can delete or change that information on Plaintiff's credit report. *Id.* at ¶¶ 31-33. Under Wells Fargo's theory, it (or any other creditor) could now send Plaintiff a dunning letter and suffer no sanction, simply because it sold the debt to a third party and therefore is no longer a "creditor." That would render § 524 meaningless and it is obviously not the law.

**B. Wells Fargo Willfully Violated the Discharge Order, Consistent with *McKenzie-Gilyard*.**

Wells Fargo contends that Plaintiff has not plausibly alleged that it willfully violated the discharge injunction. MTD at 8. As Wells Fargo notes, Plaintiff alleges both that (1) Wells Fargo maintains a financial interest in Plaintiff's debt because it keeps a percentage of amounts received on discharged debts that it has sold; and (2) Wells Fargo acts as an agent for third party purchasers by forwarding payments received from former debtors. *Id.* at 9 (citing Compl. ¶ 60).[2] Both of these allegations are in accord with this Court's decision in *McKenzie-Gilyard*, they are plausible,

---

[2] The full allegation in paragraph 60 is: "Acting as agent for the third-party purchasers to whom Defendant has sold the debts, Defendant forwards to such purchasers payments received from former debtors who feel compelled to pay off discharged debts as the only means of correcting the erroneous credit information that Defendant refuses to correct and upon information and belief, Defendant keeps a percentage of amounts received on discharged debts." *Id. See also* Compl. ¶¶ 11-13.

and, if proven, they are a sufficient basis on which to find that Wells Fargo's violation of the discharge injunction was willful.

First, Plaintiff's allegation that Wells Fargo maintains an interest in Plaintiff's debt after selling it is consistent with *McKenzie-Gilyard* and entirely plausible. As Wells Fargo notes, in cases where the consumer's debt was sold prior to a bankruptcy discharge, an allegation that a former creditor maintains a financial interest in the debt renders the creditor's refusal to update the credit reporting on that debt a willful violation of the discharge injunction. MTD at 9 (citing *McKenzie-Gilyard*, 388 B.R. at 485). That is precisely what Plaintiff has alleged here—that Wells Fargo maintains a financial interest in the debt. Wells Fargo cannot seriously contend that this allegation does not satisfy *McKenzie-Gilyard*. Instead, despite the fact that this is a motion to dismiss, Wells Fargo disputes Plaintiff's allegation by making contrary assertions that it does *not* maintain an interest in sold debt and also takes issue with the fact that Plaintiff made this allegation on information and belief. But Plaintiff's allegations must be accepted as true at the motion to dismiss stage and, moreover, Wells Fargo has presented no authority for the proposition that an allegation made on information and belief is implausible and cannot survive a motion to dismiss. Rather, that allegation is plausible on its face in that it has been borne out in identical litigation against other banks. *See, e.g., In re McKenzie-Gilyard*, 388 B.R. 474, 486 (Bankr. E.D.N.Y. 2007); *In re Bruce*, Adv. Proc. No. 14-08224 (RDD) (Bankr. S.D.N.Y.), Dkt. No. 80 at 12-13.

Moreover, Plaintiff has alleged that Wells Fargo is an agent for PRA, the purchaser of Plaintiff's debt. Compl. ¶ 60. This is the same allegation that passed muster in identical litigation before Judge Drain. *In re Haynes*, 2014 WL 3608891, at *5 (Bankr. S.D.N.Y. July 22, 2014) ("Chase is alleged to act as the buyers' agent in forwarding payments to the buyer of debt that it is aware it has been discharged after retaining a percentage. Instead of sending the money back or

at least acting as if that debt has been discharged, it thus is helping to enforce the debt's collection for its and its buyer's benefit."). Moreover, even if Wells Fargo did not retain a percentage of the payments, it certainly has an economic interest in the collection of the debt because the more discharged debt that PRA collects the more PRA will pay for the purchase of debt. Compl. ¶ 12 (". . . Defendant enhances the value of the debt it sells to third parties because third parties will pay Defendant more for delinquent debts if the third party knows that Defendant will not update the debtors' credit reports to list the debt as discharged in bankruptcy . . . .").

Wells Fargo has an incentive to act as an agent and forward the money because it increases the value of the debt it sells. For the same reason, it has an incentive not to report a debt as discharged, thereby inducing the debtor to pay on the discharged debt in order to remove the negative charge off notation. *See, e.g., In re Torres*, 367 B.R. 478, 490-91 (Bankr. S.D.N.Y. 2007) (denying motion to dismiss allegations "that [the furnisher of credit information] has continued to lay a trap for [plaintiffs] until the eventual day that they need an accurate credit report"); Compl. ¶ 11 (Wells Fargo has a "willful policy of attempting to lay a trap for Plaintiff and other Class Members until the point that they need an accurate credit report, and they cannot obtain such a credit report without paying on a discharged debt").

Finally, even if Wells Fargo were not technically an agent, it is certainly acting on behalf of a creditor. As the *Torres* court pointed out, a creditor violates § 524 when it attempts to collect directly or "*indirectly* through friends, relatives, or employees, harassment, threats of repossession and the like." 367 B.R. at 485 (citing legislative history; emphasis by the court).

For all of these reasons, Plaintiff has plausibly alleged that Wells Fargo has willfully violated the discharge injunction.

### C. Wells Fargo's Tradeline Was Inaccurate and Highly Derogatory.

Wells Fargo argues that its tradeline was never inaccurate since it showed not only

"charged off," but also a zero balance and that it had been "transferred/sold." MTD at 13. This argument is simply wrong   A "charged off" notation denotes that the debt is still is due and owing and collectible. It does not denote that the debt has been discharged in bankruptcy and cannot be collected. Compl. at ¶¶ 16-34, 39-45, 48-65.

For this reason, as other bankruptcy courts have held, a creditor's refusal to update a credit report to reflect a discharge is misleading and highly detrimental to the debtor and thus a very real harm, which injures putative class members' ability to obtain credit, housing, employment and anything else credit-dependent. *See, e.g., In re Torres*, 367 B.R. at 487-88 ("[A] credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor, that is, that the debtor has not received a discharge, that she has reaffirmed the debt notwithstanding the discharge, or that the debt has been declared non-dischargeable."); *In re Odenthal*, Case No. 11-23747 (RDD) (Bankr. S.D.N.Y.), Dkt. No. 30 at 51 ("[T]here's a major legal difference between listing in a credit report that a debt has been discharged in bankruptcy and that a debt is marked down to the zero balance but charged off . . . . A debt that is listed as zero balance charged off is still due and owing, it can be collected, and so therefore anyone reviewing the report knows that the debtor is still at risk of having the creditor come after it."); *Anderson v. Credit One Bank, N.A. (In re Anderson)*, Adv. Proc. No. 15-08214 (RDD) (Bankr. S.D.N.Y.), Dkt. No. 16 at 76 ("[T]he bases for denial of discharge generally and denial of discharge of a particular debt [are] all ugly—fraud, theft, embezzlement. So in essence the statement [denoted by "charged off"] that we don't think we're going to collect anything from this person —and by the way, they've been in bankruptcy but they haven't gotten a discharge—is about as bad as you can get."); *see also Nissou-Rabban v. Capital One Bank (USA), N.A.*, 285 F.

Supp. 3d 1136, 1150 (S.D. Cal. 2018) (denying motion to dismiss FCRA claim where "a subsequent [bankruptcy] ma[de] a once accurate reporting incomplete").[3]

Wells Fargo's argument that this case is distinguishable from *McKenzie-Gilyard*, MTD at 12, is unavailing. In *McKenzie-Gilyard*, the Equifax tradeline at issue was not the same as Plaintiff's tradeline here. The Equifax tradeline in *McKenzie-Gilyard* had an activity description of "Transfer/Sold" and a blank "Balance Amount." Significantly, there was no indication in *McKenzie-Gilyard* that the Equifax tradeline had a "charged off" notation, like Plaintiff's tradeline here.[4] In fact, a separate TransUnion tradeline in *McKenzie-Gilyard* had a "charged off" notation and it was *that* tradeline that was the subject of the litigation, not the Equifax tradeline. This Court denied the defendant's motion for summary judgment as to the TransUnion tradeline, relying on *Torres*. Thus, *McKenzie-Gilyard* in fact supports Plaintiff's allegations concerning the inaccuracy of her tradeline, and not Wells Fargo's argument to the contrary. Wells Fargo's contention that *McKenzie-Gilyard* is distinguishable because the "charged off" notation in that case was not accompanied by a zero balance and "sold/transferred" is wrong.[5] As the *Odenthal* court found, the charged off notation remains inaccurate, even when coupled with a zero balance and "sold/transferred." *Odenthal*, Case No. 11-23747 (RDD) (Bankr. S.D.N.Y.), Dkt. No. 30 at 7, 33-34.

Likewise, Wells Fargo's contention that *Murphy v. Equifax Information*, No. 12-CV-6409 (NGG) (VMS), 2013 WL 6562860, at *3 n.2 (Bankr. E.D.N.Y. Dec. 13, 2013), supports its

---

[3] Moreover, recent settlements in actions virtually identical to this one included compensation for this harm. *Echevarria v. Bank of America*, Adv. Proc. No. 14-08216-rdd, Dkt. No. 113-3; *Haynes v. Chase Bank U.S.A., N.A.*, Adv. Proc. No. 13-08370-rdd, Dkt. No. 122-3.

[4] Moreover, a blank balance amount is different from a zero balance, especially where the zero balance is accompanied by a charge off notation.

[5] Wells Fargo also cites *Torres* and *In re Mateo*, Case No. 06-01917-RDD (Bankr. S.D.N.Y. Nov. 15, 006), Doc. No. 1-2, for this same proposition.

argument is wrong.  In that case, this Court was attempting to interpret a hand written *pro se* complaint concerning alleged discrepancies in the balance reported on a debt on plaintiff's credit reports.  *Id*. at *1-2.  In a footnote, this Court noted that where a bank charges off a loan and then transfers it to a collection agency for further collection attempts, the bank may report the debt as charged off, with a zero balance and "sold/transferred."  *Id*. at *3 n.2.  It went on to note that "[t]he zero balance prevents the debt's negative balance from appearing twice on a credit report by being listed by both the bank and the collection agency."  *Id*.  Finally, the Court stated that it "note[d] this possible explanation without expressing a view on whether it applies in Plaintiff's specific case."  The possible explanation noted by the Court in *Murphy* is fine insofar as it goes.  However, it focuses on the zero balance notation and does not address Plaintiff's specific allegations here concerning the charge off notation.  Further, it does not address Plaintiff's allegation that Wells Fargo is the only entity able to report on Plaintiff's Wells Fargo tradeline—the debt buyer, PRA, is not able to do so.  Compl. ¶¶ 32-33.  For this reason, the Court's dicta in *Murphy* does not address the situation here where Wells Fargo is the only entity that can report on the tradeline at issue and it has refused to update that tradeline to remove the charge off notation.

## III.    Plaintiff Has Been Harmed.

Wells Fargo contends that Plaintiff has not suffered a "concrete compensable harm," MTD at 15-16.  Again, Judge Drain has rejected this argument in the prior cases and there is no reason to depart from that ruling here.  *See, e.g., In re Bruce*, Adv. Proc. No. 14-08224 (RDD) (Bankr. S.D.N.Y.), Dkt. No. 80, pp. 28-34 at 30 ("The injury is having [erroneous information] out there [on your credit report] and having to have a lawyer fix it."); *see also Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1114 (9th Cir. 2017) (a person's interest in the accurate reporting of their financial information is sufficiently "concrete" to confer Article III standing).

Just as Judge Drain found in the prior cases, Plaintiff has been harmed because Wells Fargo furnished inaccurate and misleading credit information concerning her Wells Fargo debt to the credit reporting agencies.  Courts in this Circuit have long held that debtors, like Plaintiff here, are "injured" for standing purposes because the acts to collect the debt in violation of the discharge order are directed toward Plaintiff's debt.  The injury is the violation of the injunction by acting to collect the specific Plaintiff's debt.   No court in this Circuit has ever required a plaintiff to allege more injury than that.  No court in this Circuit has ever stated that debtors do not have a claim until they actually pay a discharged debt in response to a defendant's wrongful actions.  No court in this Circuit has ever required a debtor to have been denied some benefit as a result of a defendant's wrongful actions in order to have standing to assert a claim under Section 524.  When the water company sends a letter to a debtor seeking to collect a discharged debt for a water bill, the debtor doesn't have to first pay the bill or get his water cut off before seeking to enforce the discharge injunction.  Yet that is what Wells Fargo is asserting here.  It is wrong.

That is because this Court and others recognize that the discharge injunction applies to acts to collect discharged debts.  Debtors whose discharged debts are the subject of those actions have been injured for the purposes of standing to assert a claim to stop those actions and recover damages for those actions.  It is the quintessential protection of the fresh start.  The fresh start is entitled to protection even before a debtor pays a discharged debt.  Wells Fargo's argument that the harm Plaintiff suffers from having erroneous information on her credit report is insufficient (without pleading some further harm flowing from that) is wrong.

Thus, Wells Fargo is liable for various forms of damages for their violation of Section 524.  Plaintiff and the putative class are entitled to compensatory and punitive damages, upon a proper showing of willfulness and oppression.  *See, e.g., McKenzie-Gilyard*, 388 B.R. at 488 (although

statutory damages are not available for violations of the discharge injunction, such violations "are not without consequences" and, upon a showing of willfulness, courts have awarded actual damages, punitive damages and attorneys' fees); *In re Ramos*, 2013 WL 5461859, at * 1-2 (Bankr. S.D.N.Y. Oct. 1, 2013) (awarding damages against Bank of America for violation of the discharge injunction); s*ee also In re Haynes*, 2014 WL 3608891 at *7 (Bankr. S.D.N.Y. July 22, 2014); *In re Torres*, 367 B.R. at 490-91 (holding that the court has jurisdiction to award damages for violation of the § 524 discharge order as a sanction for civil contempt); *In re Russell*, 378 B.R. 735, 743-744 (Bankr. E.D.N.Y. 2007) (same); *In re Nassoko*, 405 B.R. 515, 520 (Bankr. E.D.N.Y. 2009) (same).

## IV.     Plaintiff May Seek Injunctive Relief and Disgorgement on Behalf of the Class.

Wells Fargo argues that Plaintiff lacks standing to pursue injunctive relief and disgorgement.  MTD at 16-20; MTS at 16-20.  It bases this argument on its factual assertions (which are outside the four corners or the Complaint) that her Wells Fargo tradeline no longer appears on her credit report and that she did not make any post-discharge payments on her Wells Fargo debt. *Id*.  However, even accepting these factual assertions concerning the Plaintiff at face value, it is not necessary for the Plaintiff to demonstrate that she has suffered the same exact injuries as other putative class members to have standing.

As the Second Circuit has held, "in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health and Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (quotations omitted).  "When this standard is satisfied, the named

plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." *Retirement Bd. Of Policemen's Annuity and Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir 2014) (citing *NECA*, 693 F.3d at 162).[6] This class standing inquiry is separate from the inquiry that occurs—after discovery—at class certification as to whether the plaintiff's claim is typical of the class and whether the plaintiff may adequately represent the class. *NECA*, 693 F.3d at 158 n.9.

Thus, although framed as a standing argument, what Wells Fargo really aims to do is prematurely narrow the class definition or strike certain class claims altogether, which is improper in the context of this motion to dismiss. Wells Fargo's argument goes to class certification issues and must be resolved at the appropriate stage, namely class certification. *See id*.

Moreover, Plaintiff unquestionably meets the *NECA* standard for class standing. As discussed *supra* at 12-14, Plaintiff was injured by Wells Fargo's inaccurate reporting on her debt and has standing to seek damages from Wells Fargo for that harm. Moreover, the conduct that harmed Plaintiff is identical to the conduct that harmed the putative class members and thus implicates the same set of concerns, regardless of potential variations in the individual harm each class member suffered.

Many of the cases cited by Wells Fargo with respect to standing, MTD at 16-20; MTS at 16-20, either pre-date *NECA* and/or concern inapposite factual situations, such as where the named plaintiff suffered no injury whatsoever. *See, e.g., Dodge v. Cty of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004) (pre-dating *NECA* and stating the unremarkable proposition that named plaintiff

---

[6] S*ee also In re World Com Inc. Securities Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y 2003) ("The factual background of [a] named plaintiff's claim need not be identical to that of all of the class members as long as the disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.").

must have suffered some injury to have standing); *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008) (same); *Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744 KPF, 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) (named plaintiff suffered no injury at all and thus lacked standing in either an individual or class capacity).

Indeed, one of the cases cited by Wells Fargo, *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322 (S.D.N.Y. 2012), supports Plaintiff's argument here.  In that case, the court explained that "when the Supreme Court says that a named plaintiff must show that it was 'personally ... injured, not that injury has been suffered by other, unidentified members of the class,' *Lewis [v. Casey],* 518 U.S. [343,] 357 [1996], the Court does not mean that the named plaintiff must literally suffer the same actual injury that each class member suffered."  *Id*. at 332. Rather, the named plaintiff need only demonstrate that it is "part of the same 'case or controversy' against the defendant as the members of the class."  *Id*.  Moreover, the court noted that it was important not to "collapse" the standing inquiry into the class certification inquiry, stating that "[a] named plaintiff must show that it is a part of the class by showing that it has the same interest in redressing the same injurious conduct by the same defendant.  But once it has established that, questions of adequacy, typicality and the like should be resolved at the class certification stage." *Id*. at 333 (quotation omitted).

In short, whether Plaintiff may represent members of the putative class in seeking injunctive relief and disgorgement is a matter for class certification.  But it would be improper to dismiss putative class claims for injunctive relief and disgorgement at the motion to dismiss stage, given that Plaintiff satisfies the *NECA* standard.

## V.    *Bristol-Meyers* **Does Not Apply to Class Actions in Bankruptcy Court.**

In its Motion to Strike, Wells Fargo relies heavily on the Supreme Court's decision in *Bristol-Meyers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2007), to argue that

this Court lacks personal jurisdiction over defendant Wells Fargo with regard to the claims of out-of-state class members. MTS at 10-14. What is strikingly missing from Wells Fargo's brief is the express statement of the Supreme Court in *Bristol-Meyers* that its decision *does not* apply to claims in federal court. 137 S. Ct. at 1783-84. Moreover, *Bristol-Meyers* itself was not a class action, so the Court did not have before it the question of whether a class action -- in either state or federal court -- could only be brought in the state where the defendant was incorporated as, Wells Fargo argues.

Whether *Bristol-Meyers* should be applied to class actions in federal court has divided the lower courts,[7] but none of those decisions is relevant here for the fundamental reason that bankruptcy courts have nationwide jurisdiction and nationwide service of process. Bankruptcy Rule 7004(d), (f); *Lipshie v. AM Cable TV Industries* (*In re Geuga*), 110 B.R. 638, 647-49 (Bankr. E.D.N.Y. 1990); *LaMonica v. CEVA Group PLC* (*In re CIL Ltd.*), 582 B.R. 46, 70-72 (Bankr. S.D.N.Y. 2018); *Hosking v. TPG Capital Management (In re Hellas Telecommunications)*, 547 B.R. 80 (S.D.N.Y. 2016); *In re Enron Corp.*, 316 B.R. 434, 440-48 (Bankr. S.D.N.Y. 2004); *JT Moran Financial Corp. v. American Consolidated Financial Corp.* (*In re JT Moran Financial Corp.*), 124 B.R. 931, 941-43 (S.D.N.Y. 1991); *Diamond Mortgage v. Sugar*, 913 F.2d 1233, 1242-

---

[7]  *See In re Chinese-Manufactured Drywall Products Liability Litig.*, 2017 WL 5971622 (E.D. La. Nov. 30, 2017) (discussing the conflicting decisions and concluding that *Bristol-Meyers* does not limit a federal court from entertaining a nationwide class action, because a class action is different than the mass tort action in *Bristol-Meyers* and because Congress can authorize nationwide service of process and is not limited in doing so by the Fourteenth Amendment); *Haj v. Pfizer, Inc.*, 2018 WL 3707561 (N.D. Ill. Aug. 3, 2018) (reaching the same conclusion); *see also Fitzhenry-Russell et al. v. Dr. Pepper Snapple Group*, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) (holding that *Bristol-Meyers* does not apply in a class action brought in federal court even though it is based upon state law and diversity jurisdiction). The one case from the Eastern District cited by Wells Fargo, *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) is not at all factually relevant. In that case, a defendant was dismissed from a class action antitrust litigation because the defendant had virtually no nexus to New York and could not be served under New York's long-arm statute.

44 (7th Cir. 1990); *Nordberg v. Granfinanciera, S.A.* (*In re Chase & Sanborn Corp.*), 835 F.2d 1341, 1344 (11th Cir. 1988), *reversed and remanded on other grounds*, 109 S. Ct. 2782 (1989); *In re Correra*, 589 B.R. 76, 116-20 (N.D. Tex. 2018); *Carickhoff v. Occupational Medicine Clinics* (*In re Cal Dive Int., Inc.*), 2018 WL 456156 (Bankr. D. Del., Jan. 16, 2018); *Zazzali v. Swenson* (*In re DBSI, Inc.*), 451 B.R. 373, 375-78 (Bankr. D. Del., 2011); *Levey v. Hamilton* (*In re Teknek*), 354 B.R. 181, 189-94 (Bankr. N.D. Ill., 2006).

The cases Wells Fargo relies were ones in which service of process was based upon Federal Rule of Civil Procedure 4(e) which imports the jurisdictional limits of state courts.  But Rule 4(k)(1)(C), in contrast, applying to federal claims, specifically authorizes service as provided by the applicable federal statute.  In those cases, the court need only find whether the defendant has nexus to the United States generally.  Because Bankruptcy Rule 7004(d) provides for nationwide service of process, bankruptcy cases come within the terms of the Rule 4(k)(1)(c).  *See Celotex Corp. v. Rapid American Corp.* (*In re Celotex*), 124 F.3d 619, 629-30 (4th Cir. 1997); *Busch v. Buchman, Buchman & O'Brien Law Firm*, 11 F.3d 1255 (5th Cir. 1994); *Nordberg*, 835 F.2d at 1344; Wright, Miller & Steinman, Federal Practice and Procedure § 1068.1, at 727-53 (2015). Wells Fargo neither cites nor acknowledges any of this case law.

Thus, all the Court need determine is whether Wells Fargo has sufficient contacts with the United States in order to be subject to personal jurisdiction in this Court.  There is no good faith argument that Wells Fargo does not have sufficient contacts with the United States as a whole nor does Wells Fargo make any such argument.  Thus, this Court clearly has personal jurisdiction over the class claims against Wells Fargo.

## VI.    The Court Has Subject Matter Jurisdiction to Adjudicate a Nationwide Class Action.

Wells Fargo also argues that the Court lacks subject matter jurisdiction to adjudicate nationwide violations of the discharge injunction and seeks to strike Plaintiff's class allegations.

MTS at 14-16.  However, Wells Fargo does not contend that *no* class action may be maintained; instead, it is arguing about the scope of the class, and contends that it should be narrower than alleged and should not extend to debtors who obtained discharges outside of the district.  *Id.* However, arguments about the definition of the class are arguments about commonality and typicality that are subsumed in the Rule 23 analysis that takes place during class certification. Efforts to narrow the class should not take place now, before discovery and before motions to certify the class.  Determining the definition and scope of a class is more properly addressed as part of the analysis of Rule 23 requirements.  *See*, *supra*, pp. 12-14.

In addition, Wells Fargo's substantive argument is wrong and ignores the clear difference between enforcing specialized, judge-specific orders and enforcing the statutory orders at issue here.  For this reason, Judge Drain has already rejected the same argument Wells Fargo asserts here, holding that the court "has the statutory power and subject matter jurisdiction to decide this nationwide class action." *In re Haynes,* 2014 WL 3608891, at *9 (Bankr. S.D.N.Y. July 22, 2014).

As an initial matter, subject matter jurisdiction here is provided by 28 U.S.C. § 1334(b) which gives the district courts jurisdiction over all civil proceedings arising under Title 11.  The enforcement of the discharge injunction here is a core bankruptcy matter that arises under 11 U.S.C §§ 727, 524 and 105.  Once federal subject matter jurisdiction is proper in the district court as to a core bankruptcy matter arising under the Bankruptcy Code, subject matter jurisdiction is proper in the bankruptcy court to which the matter is referred under 28 U.S.C. § 157.

Moreover, subject matter jurisdiction is not lost or limited merely because the action is brought as a class action.  Class action proceedings are expressly allowed in the Federal Rules of Bankruptcy Procedure.  *See* Fed. R. Bankr. P. 7023 ("Rule 23 F. R. Civ. P. applies in adversary proceedings").  *See In re Rojas,* No. 09-07003, 2009 WL 2496807, at *1 (Bankr. S.D. Texas Aug.

12, 2009) ("[N]othing in the jurisdictional statute limits the District Court's subject matter jurisdiction (and by extension, the matters that can be referred to the bankruptcy judges) to claims filed by debtors with bankruptcy cases pending in this District.").[8]

The cases relied on by Defendants for limiting the scope of a bankruptcy court's jurisdiction for class actions misread the basis for subject matter jurisdiction. While bankruptcy court jurisdiction is often founded on "related to" jurisdiction over the *in rem* debtor's estate, that is not the only basis for jurisdiction. As Judge Drain explained in *In re Haynes*, actions under 11 U.S.C. §§ 524 and 727 have to do with prohibiting the collection of *in personam* debts and have nothing to do with the debtor's estate or *in rem* jurisdiction. *In re Haynes*, 2014 WL 3608891, at *7. Subject matter jurisdiction here is not based on "related to" or *in rem* jurisdiction and the cases that rely on that basis to limit the scope of the court's jurisdiction are inapt here.

Similarly, bankruptcy jurisdiction founded on 28 U.S.C. § 1334(e), which states that the court where a case is commenced has exclusive jurisdiction over the "debtor's property" and "estate", is not implicated here. "Again, however, the present class action does not involve a debtor's interests in property or property of the estate. . . . It is an action to enforce the discharge, that is, to protect a statutory right prohibiting collection of *in personam* claims against the members of the debtor class that arose pre-bankruptcy." *In re Haynes*, 2014 WL 3608891, at *7.

That is why Wells Fargo's reliance on *Alderwoods Group, Inc. v. Garcia*, 682 F. 3d 958 (11th Cir. 2012), is misplaced. *Alderwoods* limited the bankruptcy court's jurisdictional reach

---

[8] *See also In re Cano,* 410 B.R. 506 (S.D. Tex. 2009); *In re Krause,* 414 B.R. 243 (S.D. Ohio 2009); *In re Patrick,* 344 B.R. 56 (Bankr. M.D. Pa. 2005); *In re Sims,* 278 B.R. 457 (Bankr. E.D. Tenn. 2002); *Bank United v. Manley,* 273 B.R. 229 (N.D. Ala. 2001); *In re Harris,* 280 B.R. 876 (Bankr. S.D. Ala. 2001); *In re Noletto,* 244 B.R. 845(S.D. Ala. 2000); *In re Sheffield,* 281 B.R. 24 (Bankr. S.D. Ala. 2000); *In re Aiello,* 231 B.R. 693 (N.D. Ill. 1999).

only to the court administering the property of the estate, without even considering that subject matter jurisdiction for discharge violations is founded on those claims arising under Title 11.

Judge Drain also carefully analyzed and rejected the argument Wells Fargo makes here: that only the judge who issued the discharge order can enforce it. Judge Drain concluded – as have many other courts – that discharge injunctions under § 524 are fundamentally different from other specific, judge-crafted injunctions or orders and bankruptcy courts do not lack subject matter jurisdiction to enforce them.

While it is true that judges have inherent power to control their cases and proceedings and to sanction behavior that interferes with their lawful orders, *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991), this case is not seeking contempt for violation of a judge-crafted order. This case seeks contempt for violation of statutory injunction, an important distinction that was explained by Judge Drain in *Haynes*:

> There is, however, a fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in § 524(a) to support the discharge under § 727 of the Bankruptcy Code.

*In re Haynes*, 2014 WL 3608891, at *8.

The discharge orders in this case are not unique to any particular judge and the power to enforce them comes from § 105. Moreover, the discharge orders at issue are made on identical standardized forms that are used for all debtors nationwide. *Id*. at *8 ("It is not a handcrafted order"). And because the discharge orders are statutorily created, a debtor seeking to enforce them need not establish the factors ordinarily required under for an injunction under Rule 65. *Id.* ("By statute, in 524(a)(2), it operates as an injunction. For the discharge injunction to be granted, the debtor does not have to prove the factors required for an injunction under Federal Rule of Civil

Procedure 65.").[9]  All that is required is to show that the debt was subject to discharge and not specifically declared to be non-dischargeable.  *Id.*

Indeed, in *In re Brizinova,* 565 B.R. 488 (E.D.N.Y. 2017), this Court specifically recognized the important distinction between unique court orders and "purely statutory" orders. In *Brizinova,* a claim for sanctions arose from statements made in a motion to dismiss that arguably violated an order issued in a different court.  This Court noted the general rule that judge specific orders be enforced by the issuing judge (and ultimately ruled that the judge-specific order in *Brizinova* follow that rule), but contrasted other situations in which more general enforcement would be acceptable.  Specifically, this Court stated:

> That is not to say that it is never appropriate for one judge to enforce an order that was entered by another judge in a different case.  For example, in the bankruptcy context, courts may distinguish between whether they are asked to enforce a "purely statutory order" such as the automatic stay contained in Bankruptcy Code § 362 or the discharge injunction set forth in Bankruptcy Code § 524, on the one hand, and an injunction individually crafted by the bankruptcy judge, on the other.

*Id.* at 503 (citations omitted).

The First Circuit followed the same reasoning in *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439 (1st Cir. 2000), when it ruled claims for violations of discharge injunctions under §

---

[9] This reasoning is consistent with scholarly analysis on the issue.  For example, then-professor Elizabeth Warren and Jay L. Westbrook also take the position that contempt of a statutory injunction must be treated differently than contempt of a local court order when considering the jurisdiction to enforce such orders.  They criticize cases – like those cited by Defendant – that limit redress for statutory injunctions to the "issuing court" because, in effect, there is no issuing court. Elizabeth Warren & Jay L. Westbrook, Class Actions for Post-Petition Wrongs: National Relief Against National Creditors, Am. Bankr. Inst. J. March 2003, at 14, 46-47.  *See also* Kara Bruce, The Debtor Class, 88 Tul. L. Rev. 21, 25,71-74 (2013) (surveying the law and concluding that "courts generally should not hesitate, on jurisdictional grounds, to certify nationwide classes of consumer debtors asserting violations of bankruptcy law" and that rather than limiting § 524 contempt cases to the issuing court, a "court may instead (1) interpret § 524 to provide an implied right of action to enforce its violation, (2) interpret § 105 to permit nationwide class relief for discharge-injunction violations, or (3) find that the limitations on judicial contempt power do not apply with equal force for statutory injunctions.").

524 could be brought as a nationwide class. *Bessette* found that § 105 empowered the district court to exercise its equitable powers to facilitate the implementation of other Bankruptcy Code provisions and noted the important distinction between statutory and inherent powers. *Id.* at 445 ("§ 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have" including the power to sanction for contempt.) *Accord In re Kalikow,* 602 F.3d at 97. *Bessette* rejected the argument that only the issuing judge could enforce a discharge injunction. According to the Court:

> Appellant seeks enforcement of the statutory injunction set forth in §524, not one individually crafted by the bankruptcy judge, in which that judge's insights and thought processes may be of particular significance. Thus, few of the practical reasons for confining contempt proceedings to the issuing tribunal apply here.

*Id.* at 446. *See also id.* at 445 (noting the significance of "dealing, as here, with violation of a purely statutory order."); *Walls* v. *Wells Fargo Bank, NA.,* 262 B.R. 519, 528 (Bankr. E.D. Cal. 2001) ("The [automatic stay and discharge] injunctions . . . are Code created, statutory injunctions . . . . Their extent does not depend on individual judges for injunctive relief fashioned by individual bankruptcy judges.").

As Judge Drain also noted, the position that discharge injunctions can be enforced by other judges within a particular district, but not judges from a different district, is logically inconsistent. If the rationale for restricting jurisdiction to a district-wide class is that only the judge who issued the order can adjudicate contempt of it, then it makes no sense to allow judges in the same district to enforce discharge injunctions issued by other judges within the district. In other words, why would a district-wide class be permissible to adjudicate § 524 claims, but a nationwide class be impermissible? Both seemingly run afoul of the rationale that only the judge who issued the order

can adjudicate contempt of it.  *See In re Haynes,* 2014 WL 3608891, at *9 (rejecting the district-wide approach and finding nationwide jurisdiction for enforcement of discharge injunctions).[10]

To be sure, many cases repeat the principle that a only the judge who issued an order can adjudicate contempt of it and some bankruptcy courts have applied that reasoning to limit class actions seeking enforcement of discharge injunctions.  Respectfully, those courts fail to appreciate the underlying scope of subject matter jurisdiction and the rationale for limiting enforcement of a judge's specifically crafted order and the application of that rationale to statutory injunctions.  For example, while *Cox v. Zale Delaware, Inc.,* 239 F.3d 910 (2001), involved statutory discharge injunctions, it also involved reaffirmation agreements that added jurisdiction-specific issues.  Nevertheless, the court in *In re Cline*, 282 B.R. 686 (W.D. Wash. 2002), relied on *Cox* despite the fact that no jurisdiction-specific issues were present.

Finally, this is not an issue of jurisdiction, but of comity.  *See Gray v. Petroseed Co., Inc.*, 985 F. Supp. 625, 632-634 (D.S.C. 1996) (question of whether contempt of a court order can be adjudicated by another court is a question of comity, not subject matter jurisdiction).  But there is no comity justification here where the order entered in each court is virtually identical and the injunction derives from the statute, which, of course, applies in every court.

Accordingly, the Court has subject matter jurisdiction to adjudicate a nationwide class.

---

[10] Some of the cases cited by Wells Fargo take this logically inconsistent position: *In re Cline*, 282 B.R. 686 (W.D. Wash. 2002); *In re Beck*, 283 B.R. 163 (Bankr. E.D. Pa. 2002).  Another takes the position that civil contempt proceedings may only be brought by motion in the bankruptcy case and not by way of an adversary proceeding.  *See In re Death Row Records, Inc.*, No. 06-11205, 2012 WL 952292, at *12 (B.A.P. 9th Cir. Mar. 21, 2012).  That is not the law in this Circuit, as the numerous adversary proceedings for violation of the discharge injunction that have been brought here attest.

**VII.    Plaintiff May Represent Class Members Whose Accounts Were Not Sold.**

Finally, Wells Fargo also argues that Plaintiff lacks standing to represent class members whose accounts were not sold.  MTS at 20-22.  By making this argument, Wells Fargo again seeks to impermissibly narrow the class definition at the motion to dismiss stage.  *Chen-Oster*, 877 F. Supp. 2d at 117.  Moreover, the allegations about which Wells Fargo complains fall squarely within the class definition, which is not limited to sold debt.  The putative class in this case includes individuals that have debts discharged in bankruptcy whether or not those debts have been sold by Wells Fargo.  Compl. ¶ 67.  As Wells Fargo acknowledges, MTS at 21, in addition to making allegations concerning sold accounts, Plaintiff has also alleged that Wells Fargo had a policy of refusing to update tradeline reporting on accounts that it retained and never sold and which were discharged in bankruptcy.  Compl. ¶ 10.  Thus, Plaintiff's class definition is neither "overbroad" nor "amorphous."  Plaintiff has sufficiently identified the putative class members and has alleged that all class members were harmed.  *Id.*  In addition, Plaintiff's claim, which concerns a sold account, need not be identical to those of class members whose accounts were not sold.  *NECA*, 693 F.3d at 162.  Plaintiff and all members of the proposed class suffered a common injury: Wells Fargo's refusal to update and correct their credit reports to show that their debts were discharged in bankruptcy.  In any event, Issues of commonality and typicality must be resolved after discovery at class certification.  *Id.* at 158 n.9.

<b><u>CONCLUSION</u></b>

For all the foregoing reasons, Wells Fargo's motion to dismiss the Complaint and motion to strike the class allegations should be denied in full.

Dated: February 12, 2019

**BOIES SCHILLER FLEXNER LLP**

By: */s/ George F. Carpinello*
George F. Carpinello
Adam R. Shaw
Anne M. Nardacci
30 South Pearl Street, 11th Floor
Albany, NY  12207
(518) 434-0600

**CHARLES JUNTIKKA &**
**ASSOCIATES LLP**
Charles Juntikka
30 Vesey Street, Suite 100
New York, NY  10007
(212) 315-3755

*Attorneys for Plaintiff-Debtor Olufunmilayo*
*Ajasa*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2019 I filed the foregoing via the Court's CM/ECF system, which will send a notification of such filing to counsel of record.

*/s/ George F. Carpinello*
George F. Carpinello