UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE OLUFUNMILAYO AJASA,<br><br>        Debtor. | Chapter 7<br>Case No. 10-50719-ess |
| IN RE JOSEPH LOPEZ,<br><br>        Debtor. | Chapter 7<br>Case No. 17-46380-ess |
| OLUFUNMILAYO AJASA AND JOSEPH LOPEZ,<br><br>        Debtors and Plaintiffs<br>        on behalf of themselves<br>        and all others similarly<br>        situated,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>        Defendant. | Adversary Case No. 18-01122-ess |

## MEMORANDUM DECISION ON THE DEFENDANT'S MOTION TO STRIKE <u>CLASS ALLEGATIONS</u>

*Appearances:*

George F. Carpinello, Esq.
Adam Shaw, Esq.
Boies Schiller Flexner LLP
30 South Pearl Street (11th Floor)
Albany, NY 12207
  *Attorneys for Plaintiffs Olufunmilayo*
  *Ajasa and Joseph Lopez*

Charles Juntikka, Esq.
Charles Juntikka & Associates LLP
30 Vesey Street (Suite 100)
New York, NY 10007
  *Attorneys for Plaintiffs Olufunmilayo*
  *Ajasa and Joseph Lopez*

Jarrod D. Shaw, Esq.
Benjamin J. Sitter, Esq.
McGuireWoods LLP
260 Forbes Avenue (Suite 1800)
Pittsburgh, PA 15222
  *Attorneys for Defendant Wells Fargo Bank,*
  *N.A.*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

<u>**Introduction**</u>

The matter before the Court is a motion by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") to strike class allegations, with prejudice, from the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(f), 23(c), and 23(d)(1)(D), as incorporated by Federal Rules of Bankruptcy Procedure 7012 and 7023 (the "Motion to Strike").

Wells Fargo argues that these class allegations should be stricken – now – because this Court lacks subject matter jurisdiction to adjudicate discharge violation claims arising from discharge orders issued outside this District. And it argues that this motion can be decided – now – before the question of class certification is decided, because "no amount of discovery will alter the analysis of this purely legal question." Def's Mem. at 1.

The Plaintiffs disagree. They respond first that the Motion to Strike is untimely and premature, and should be considered at the time of class certification. Next, they argue that this Court plainly has subject matter jurisdiction to proceed here. They point to Judiciary Code Section 1334, which is the source of this Court's – and every bankruptcy court's – subject matter jurisdiction "to adjudicate claims arising under or related to the Bankruptcy Code," and Bankruptcy Rule 7023, which permits "this Court, like all bankruptcy courts, . . . to entertain class actions." Plfs' Opp. at 2. They also dispute that only the issuing court can adjudicate a discharge injunction violation claim, and question how, if that is so, one judge within a district could hear even a district-wide class claim. And finally, the Plaintiffs disagree with Wells Fargo's interpretation of recent Second Circuit and Supreme Court decisions, and argue that those cases either support their position here or do not address it.

In the Amended Complaint, Plaintiffs Olufunmilayo Ajasa and Joseph Lopez, on behalf

of themselves and all others similarly situated, claim that Wells Fargo violated their discharge injunctions by refusing to correct or update their credit report tradelines to reflect that their respective debts were discharged in bankruptcy.  Am. Compl., ECF No. 21.  They allege that "[Wells Fargo's] violation of the injunction of § 524(a)(2) is widespread and literally nationwide."  Am. Compl. ¶ 87.  And they seek to represent a nationwide class consisting of all individuals who, like them, have received Chapter 7 bankruptcy discharges and whose credit reports list accounts or debts with Wells Fargo "that were not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy."  Am. Compl. ¶ 80.

Wells Fargo's Motion to Strike calls for this Court to consider whether the issues that it identifies are distinct from the issues to be addressed in the context of class certification – that is, whether "'it is clear that . . . the motion to strike "addresses issues separate and apart from issues that will be decided on a class certification motion."'"  Def's Mem. at 2-3 (quoting *Bank v. Creditguard of America*, 2019 WL 1316966 at *4 (E.D.N.Y. Mar. 22, 2019) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012))).  If the questions presented are, in substance, the same as the questions to be addressed on a motion for class certification, then they should be deferred until that matter is before the Court, and addressed in that context.

Wells Fargo's Motion to Strike also calls for this Court to consider whether it lacks subject matter jurisdiction to consider the Plaintiffs' allegations that seek the certification of a nationwide class.  Subject matter jurisdiction is foundational, and serves as the starting point for everything that a federal court can do.  When that question is raised, it must be addressed, and promptly.  Where it is lacking, the court cannot proceed.

And finally, if subject matter jurisdiction is present, and the issues identified are distinct

from the questions to be addressed in a motion to certify a class, then the Court must consider whether, at this stage in these proceedings, it is clear that this Court cannot entertain this action as a nationwide class, no matter the definition of the class, the nature of the certification that is sought, or the evidence.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012 of the United States District Court for the Eastern District of New York.

This Court may also adjudicate these claims to final judgment.  Enforcement of the discharge injunction is a core proceeding arising under the Bankruptcy Code.  *See In re Nicholas*, 457 B.R. 202, 215 (Bankr. E.D.N.Y. 2011).  In addition, the parties have given their consent to this Court entering a final judgment.  July 14, 2020 Hearing Tr. at 13:7-14:12, ECF No. 52.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940, 575 U.S. 665 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "'with the consent of all the parties to the proceeding'" (quoting 28 U.S.C. § 157(c)(2)).

## Background

*Selected Procedural History of this Adversary Proceeding*

On November 8, 2018, Plaintiff Olufunmilayo Ajasa commenced this adversary proceeding by filing a complaint against Wells Fargo, on behalf of herself and an alleged nationwide class, seeking a declaratory judgment, injunctive relief, and damages arising out of what she describes as Wells Fargo's "systematic practice" of violating the discharge injunction provided by Bankruptcy Code Section 542(a)(2).  Compl. ¶ 1, ECF No. 1.  Ms. Ajasa states that

Wells Fargo violated the discharge injunction by its practice of failing to update and correct creditor information to credit reporting agencies to reflect that certain discharged debts are no longer due and owing, as they have been "discharged in bankruptcy." Compl. ¶ 1. Thereafter, on June 26, 2019, Ms. Ajasa filed an amended complaint to add Mr. Lopez as an additional plaintiff.

On July 29, 2019, Wells Fargo filed this Motion to Strike the class allegations in the Amended Complaint. On August 28, 2019, the Plaintiffs filed opposition to the Motion to Strike. And on September 13, 2019, Wells Fargo filed a reply to the Plaintiffs' opposition. Def's Reply, ECF No. 32. On November 5, 2019, Wells Fargo and the Plaintiffs each filed letters addressing the Fifth Circuit's decision in *Crocker v. Navient Solutions, LLC* (*In re Crocker*), 941 F.3d 206 (5th Cir. 2019). Def's Ltr., ECF No. 36; Plfs' Ltr., ECF No. 37. And on June 18, 2020, Wells Fargo and the Plaintiffs each filed letters addressing the Second Circuit's decision in *Belton v. GE Capital Retail Bank* (*In re Belton*), 961 F.3d 612 (2d Cir. 2020), *cert. denied*, 2021 WL 850624 (U.S. Mar. 8, 2021). Def's Belton Ltr., ECF No. 50; Plfs' Belton Ltr., ECF No. 51.

On September 24, 2019, the Court heard arguments from the parties, and from time to time, including on February 4, 2021, the Court held continued pre-trial conferences and hearings on the Motion to Strike, and the record is now closed.

*The Allegations of the Amended Complaint*

Ms. Ajasa and Mr. Lopez (the "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class Members"), seek a declaratory judgment, injunctive relief, and damages arising from Wells Fargo's alleged "systematic practice" of violating the discharge injunction provided by Bankruptcy Code Section 542(a)(2). Am. Compl. ¶ 1. The Plaintiffs

allege that Wells Fargo has a practice of failing to update and correct creditor information to credit reporting agencies to reflect that certain debts discharged through a bankruptcy case are no longer due and owing. *Id*. The purpose of this practice, the Plaintiffs state, is to utilize the coercive effect of an inaccurate credit report to pressure borrowers to pay the debt, thereby enhancing the collectability of the discharged debts and the overall value of the obligations that Wells Fargo sells to third parties. Am. Compl. ¶ 13.

The Plaintiffs allege that Wells Fargo was aware of their bankruptcy discharges, and that the debts that they owed to it were discharged; Wells Fargo was aware that it was incorrectly reporting on the status of the accounts; Wells Fargo was able to update or correct its reporting on the status of the accounts following the entry of a bankruptcy discharge in their respective cases; and Wells Fargo "willfully failed to update or correct Plaintiffs' or other Class Members' credit reports because it has adopted a policy of not updating credit information for debts that are discharged in bankruptcy for the purpose of collecting such discharged debt." Am. Compl. ¶ 8.

They allege that by not updating the credit information on former bankruptcy debtors' accounts, Wells Fargo "enhances the value of the debt it sells to third parties because third parties will pay Defendant more for delinquent debts if the third party knows that Defendant will not update the debtors' credit reports to list the debt as discharged in bankruptcy." Am. Compl. ¶ 13. The Plaintiffs further state that Wells Fargo has a "direct financial interest" in the collection of the discharged debts, because it retains a percentage interest in amounts paid on discharged debts that are paid directly to Wells Fargo. Am. Compl. ¶ 14. And they allege that Wells Fargo has been aware that this conduct was illegal since at least 2007. Am. Compl. ¶ 16.

The Plaintiffs request that this Court declare Wells Fargo's practices to be in violation of their rights and those of the Class Members, and in contempt of the statutory discharge

injunction set forth in Bankruptcy Code Section 524(a)(2).  They seek permanent injunctive relief requiring Wells Fargo immediately to correct and update the credit reporting records of all class members.  Am. Compl. ¶ 90.  They also seek an award of compensatory and punitive damages, as well as attorneys' fees and costs.  *Id*.

And finally, the Plaintiffs seek to maintain this action on behalf of themselves and as representatives of the following nationwide class:

> All individuals who, after May 3, 2007, have had on file with any of the credit reporting agencies Tradelines listing accounts or debts with Defendant that were not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 of the Bankruptcy Code.

Am. Compl. ¶ 80.  The Plaintiffs allege that this action and class satisfy the requirements of ascertainability, numerosity, typicality, adequacy of representation, and commonality necessary for class certification under Rule 23(a).  Am. Compl. ¶¶ 81-86.  *See* Fed. R. Civ. P. 23(a).

*Wells Fargo's Arguments in Support of the Motion To Strike Class Allegations*

As a threshold matter, Wells Fargo argues that its motion is timely, and ripe for determination at this stage in these proceedings.  It urges that discovery will not alter the analysis of this purely legal question, and notes that the Federal Rules permit a court to "strike class allegations at any time."  Def's Mem. at 2.  It also notes that Rule 23(c) states that "'the court must – at an early practicable time – determine by order whether to certify the action as a class action'" because "'[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim.'"  Def's Mem. at 2 (quoting *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009)).

And Wells Fargo points out that a court in this district concluded that it was appropriate to consider a motion to strike class allegations where "it is clear that the putative class action claim will not proceed and/or the motion to strike 'addresses issues separate and apart from issues that will be decided on a class certification motion.'"  Def's Mem. at 2-3 (quoting *Bank*, 2019 WL 1316966 at *4).

Wells Fargo also notes that while motions to strike are "generally disfavored . . . there is an exception to this general rule."  Def's Reply at 2.  Specifically, it argues that "a pre-discovery motion to strike class allegations is appropriate where the motion 'addresses issues "separate and apart from the issues that will be decided on a class certification motion."'"  Def's Reply at 2 (quoting cases).  And Wells Fargo confirms that it is *not* seeking to address or litigate the Rule 23 class certification factors at this time.

Wells Fargo argues that the Plaintiffs' class allegations must be stricken with prejudice because this Court lacks subject matter jurisdiction to adjudicate contempt claims based on discharge injunctions issued by other courts.  It states that "this Court lacks jurisdiction to enforce injunctions that did not issue from this district," and therefore, that "Plaintiffs cannot represent a nationwide class of debtors alleging violations of injunctions issued by a variety of courts across the country."  Def's Mem. at 3, 7.  It points to the Supreme Court's decision in *In re Debs*, where the Court observed that "the sole adjudication of contempts, and the punishments thereof belong[] exclusively, and without interfering, to each respective court."  *In re Debs*, 158 U.S. 564, 594-95 (1895), *abrogated on other grounds by Bloom v. State of Ill.*, 391 U.S. 194, 195 (1968).  *See* Def's Mem. at 3.  And it notes that "no amount of discovery will alter this analysis."  Def's Mem. at 3.  It also cites the decisions of several courts that address or enforce discharge injunctions that they issued.  Def's Mem. at 4-5.

7

Wells Fargo argues that this conclusion is not altered by "[t]he fact that the discharge injunction is a statutory form order not individually crafted by each bankruptcy judge." Def's Mem. at 5. It points to the Second Circuit's decision in *Anderson v. Credit One Bank, N.A.* (*In re Anderson*)*,* 884 F.3d 390 (2d Cir. 2018), where that court observed that "[t]hough the discharge injunction itself is statutory and thus a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated." Def's Mem. at 6 (quoting *In re Anderson,* 884 F.3d at 390). And it notes that in *In re Crocker*, the Fifth Circuit addressed the same issue and "'adopt[ed] the language of the Second Circuit that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold "respect for judicial process."'" Def's Ltr. at 1 (quoting *In re Crocker*, 941 F.3d at 216 (quoting *In re Anderson*, 884 F.3d at 391)). As the Fifth Circuit observed, "'only the bankruptcy court issuing the discharge'" has the authority "'to enforce the injunction through contempt.'" Def's Ltr. (quoting *In re Crocker*, 941 F.3d at 215).

It also points to the Supreme Court's recent decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), where the Court observed that "'the statutes specifying that a discharge order "operates as an injunction," . . . bring with them the "old soil" that has long governed how courts enforce injunctions.'" Def's Mem. at 6 (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)). And it argues that the cases cited by the Plaintiffs do not require a different conclusion, because, among other reasons, "although the discharge injunction is a creature of statute (and thus standardized), it comes into existence only upon issuance of an order by a court in a particular bankruptcy case." Def's Reply at 5.

In addition, Wells Fargo argues that the bankruptcy court's decision in *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014), should not be viewed as persuasive, for several reasons. It notes that in that decision, the bankruptcy court recognized that "'the majority of courts have either held that they lack the power to determine such class actions or . . . can do so only with respect to debtors who have been discharged in that district.'" Def's Mem. at 7 (quoting *In re Haynes,* 2014 WL 3608891, at *6 (Bankr. S.D.N.Y. July 22, 2014)). And it also argues that since *In re Haynes* was decided, both the Second Circuit and the Supreme Court followed different paths in *In re Anderson* and *Taggart.*

Therefore, Wells Fargo concludes, because the Plaintiffs seek certification to represent a nationwide class of debtors, and not only those whose discharge orders were issued in this District, "the class definition . . . is overly broad and that portion of the class whose injunctions were issued outside of this district must be stricken for lack of subject matter jurisdiction." Def's Mem. at 7.

*The Plaintiffs' Arguments in Opposition to the Motion To Strike Class Allegations*

The Plaintiffs oppose the relief sought by Wells Fargo, on several grounds. At the outset, they argue that the Motion to Strike is premature, and seeks relief that is inappropriate at this time. They note that motions to strike are disfavored, and that any issues concerning the certification of a class can, and should, be addressed in the context of a motion to certify the class. Plfs' Opp. at 2. In particular, they argue that "[i]n this Circuit, . . . '[m]otions to strike are generally looked upon with disfavor'" Plfs' Opp. at 3 (quoting *Chen-Oster,* 877 F. Supp. 2d at 117). And they note that "'a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, where a more complete factual record can aid

the court in making this determination.'"  Plfs' Opp. at 3 (quoting *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012)).

The Plaintiffs also argue that this Court has subject matter jurisdiction to consider claims asserted on behalf of a putative nationwide class.  They note that the enforcement of the discharge injunction is a core bankruptcy matter that arises under Bankruptcy Code Sections 727, 524, and 105, and indisputably within the bankruptcy court's jurisdiction. Plfs' Opp. at 4.  And they argue that "subject matter jurisdiction is not lost or limited merely because the action is brought as a class action," which is specifically allowed by the Bankruptcy Rules.  Plfs' Opp. at 4.  They point out that this jurisdiction is consistent with "the fact that both the bankruptcy court and the district court in two of the seven nationwide class actions has already approved of nationwide settlements."  Plfs' Opp. at 5 (citing cases).

And the Plaintiffs assert that unlike jurisdiction grounded in the *in rem* nature of some aspects of a bankruptcy case, their claims, like the claims addressed in *In re Haynes*, "are concerned with the collection of *in personam* debts and have nothing to do with the debtor's estate or *in rem* jurisdiction."  Plfs' Opp. at 5 (citing *In re Haynes*, 2014 WL 3608891 at *6-7). For these reasons, they argue, Wells Fargo's reliance on the Eleventh Circuit's decision in *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012), is similarly misplaced, because there, the court addressed the scope of the bankruptcy court's jurisdiction under 28 U.S.C. § 1334(e), and the administration of the property of the estate – while here, this Court's jurisdiction is grounded in "the general grant of jurisdiction under § 1334(b) which gives jurisdiction of 'all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.'"  Plfs' Opp. at 6 (quoting 28 U.S.C. § 1334(b)).

The Plaintiffs urge that here, the bankruptcy court can entertain a nationwide class, for many of the same reasons that other courts, including courts within and outside this Circuit, have reached the same conclusion, and describe the question as "a matter of comity not a question of jurisdiction." Plfs' Opp. at 6 (citing *Gray v. Petoseed Co.*, 985 F. Supp. 625, 632-34 (D.S.C. 1996)). They argue that several courts have found that statutory injunctions – like the bankruptcy discharge injunction – are "fundamentally different from other specific, judge-crafted injunctions or orders and bankruptcy courts do not lack subject matter jurisdiction to enforce them." Plfs' Opp. at 6 (citing cases). And they point to the bankruptcy court's observation in *In re Haynes* that "'[t]here is . . . a fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in § 524(a) to support the discharge.'" Plfs' Opp. at 7 (quoting *In re Haynes*, 2014 WL 3608891, at *8). The Plaintiffs also note that the cases relied upon by Wells Fargo "fail to appreciate the underlying scope of subject matter jurisdiction and the rationale for limiting enforcement of a judge's specifically crafted order and the application of that rationale to statutory injunctions." Plfs' Opp. at 9.

Finally, the Plaintiffs argue that neither the Second Circuit's decision in *In re Anderson* nor the Supreme Court's decision in *Taggart* requires rejection of a nationwide class here. They argue that in *In re Anderson*, the court addressed whether enforcement of an arbitration clause in the context of an asserted discharge injunction violation would conflict with the purposes of the Bankruptcy Code, and in that context, the court found that "a bankruptcy judge, not an arbitrator, [should] adjudicate the contempt." Plfs' Opp. at 11.

The Plaintiffs also dispute that the Fifth Circuit's decision in *In re Crocker* is relevant to the matters before the Court in this Motion to Strike, for several reasons. They point out that *In*

11

*re Crocker* does not address the question of class certification. Plfs' Ltr. at 1. They also argue that the decision misinterprets the consequence of the 1978 Bankruptcy Act in the context of Bankruptcy Rule 4004(f), which permits a party to register and enforce a discharge order in a district other than the district that entered it, and suggest that the effect of the *Crocker* decision would be to invalidate that rule. Plfs' Ltr. at 1. And they note that *In re Anderson*, cited by the Fifth Circuit, addressed whether arbitration is the appropriate forum to adjudicate an alleged discharge violation, not whether a court other than the issuing court could consider such a claim. Plfs' Ltr. at 2.

And as to the Supreme Court's decision in *Taggart*, the Plaintiffs note that *Taggart* does not address the jurisdiction of a bankruptcy court to enforce a nationwide class in the context of Bankruptcy Code Section 524. Rather, they argue, the Court addressed "the standard to be applied in a contempt proceeding" for violation of the discharge injunction where the creditor argues that it acted in good faith, and concluded that a violation may lie "'where there is not a "fair ground of doubt" as to whether the creditor's conduct might be lawful under the discharge order.'" Plfs' Opp. at 11 (quoting *Taggart*, 130 S. Ct. at 1804).

### The Applicable Legal Standards

#### *The Elements of a Discharge Injunction Violation Claim*

As this Court has observed, "[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a 'fresh start.'" *McKenzie-Gilyard v. HSBC Bank Nevada, N.A.* (*In re McKenzie-Gilyard*), 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007) (citing *Marrama v. Citizens Bank,* 549 U.S. 365, 367 (2007)). The discharge injunction is central to this "fresh start," because it protects debtors "from creditors' attempts to collect discharged debts after bankruptcy." *In re McKenzie-Gilyard*, 388 B.R. at 480.

12

Bankruptcy Code Section 524(a)(2) describes the function of a debtor's discharge in broad terms:

> A discharge in a case under this title—. . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2). This broad scope is confirmed by the legislative history of Section 524(a)(2), which "similarly supports a broad interpretation of an 'act to collect . . . any debt' that violates the Section 524 discharge injunction." *In re McKenzie-Gilyard*, 388 B.R. at 481. As another bankruptcy court observed, "the statute's plain terms obviate consideration of its legislative history . . . but it is worth noting that the legislative history . . . also supports a broad reading of the injunction contained in section 524(a)(2)." *Torres v. Chase Bank USA, N.A.* (*In re Torres*), 367 B.R. 478, 484-85 (Bankr. S.D.N.Y. 2007). *See Russell v. Chase Bank USA, NA* (*In re Russell*), 378 B.R. 735, 741 (E.D.N.Y. 2007) (stating that a broad reading of Section 524(a)(2) is supported by legislative history).

To state a plausible discharge injunction violation claim in the circumstances present here, a debtor must allege that the defendant was a creditor at the time of his or her bankruptcy filing; that it was aware of the plaintiff's bankruptcy discharge; that it was aware that it was reporting on the status of the account incorrectly; that it had the ability to update or correct its reporting on the status of the account after the plaintiff received his or her bankruptcy discharge; and that it willfully did not do so. *See In re McKenzie-Gilyard*, 388 B.R. at 482. Of course, for a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt. *In re Eppolito*, 583 B.R. 822, 826 (Bankr. S.D.N.Y. 2018) (stating that "[t]he discharge injunction survives the closure of a bankruptcy case and applies permanently to every debt that is discharged"). *See Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 596 B.R.

86, 96 (Bankr. E.D.N.Y. 2019) (citing *In re Eppolito*, 583 B.R. at 826); *In re Azevedo*, 506 B.R.

277, 283 (Bankr. E.D. Cal. 2014) (observing that "[s]howing a violation of a discharge order by

definition requires showing specifically that the order applies to the debt on which the violation

is premised").

And as the Supreme Court has recently stated, a finding of contempt is appropriate when

an injunction has been violated.  "Under traditional principles of equity practice, courts have

long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an

injunction or 'compensate the complainant for losses' stemming from the defendant's

noncompliance with an injunction." *Taggart,* 139 S. Ct. at 1801 (quoting *United States v. United*

*Mine Workers*, 330 U.S. 258, 303-04 (1947)).  In particular, the Supreme Court observed:

> [A] court may hold a creditor in civil contempt for violating a discharge order if
> there is *no fair ground of doubt* as to whether the order barred the creditor's
> conduct.  In other words, civil contempt may be appropriate if there is no
> objectively reasonable basis for concluding that the creditor's conduct might be
> lawful.

*Taggart*, 139 S. Ct. at 1799.  At the same time, the Court also noted that "[w]e have not held,

however, that subjective intent is always irrelevant.  Our cases suggest, for example, that civil

contempt sanctions may be warranted when a party acts in bad faith." *Taggart*, 139 S. Ct. at

1802.

### *The Standard for a Motion To Strike Under Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D)*

The context for a motion to strike class allegations from an adversary proceeding is

Federal Rule of Civil Procedure 23(a), made applicable in adversary proceedings by Bankruptcy

Rule 23.  Rule 23 provides that "one or more members of a class may sue . . . as representative

parties on behalf of all members only if:"

(1)      the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

Federal Rule of Civil Procedure 12(f), made applicable in adversary proceedings by Bankruptcy Rule 7012(b), provides that the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) may be invoked by the court acting on its own, or on motion by a party. *Id*.

To the same effect, Federal Rule of Civil Procedure 23(d)(1)(D), made applicable in adversary proceedings by Bankruptcy Rule 7023, permits a court to issue an order that "require[s] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

In the context of a putative class action, these rules permit the court to excise class allegations from a complaint, and to close the door on the prospect of class treatment, before the complaint has been answered or tested by a motion to dismiss and before any discovery, including class discovery, has occurred.

Courts agree that motions to strike class allegations should not be the norm. As one district court observed:

> "Motions to strike are generally looked upon with disfavor [and] a motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."

*Chen-Oster*, 877 F. Supp. 2d at 117 (quoting *Chenensky v. New York Life Ins. Co.*, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011)). And the court noted that for these reasons,

15

"[g]enerally speaking, then, motions of this kind are deemed procedurally premature." *Chen-Oster*, 877 F. Supp. 2d at 117.

At the same time, courts recognize, at least implicitly, that motions to strike under Rules 12(f) and 23(d)(1)(D) can serve a useful and even important purpose. As one court noted in the context of a motion under Rule 23(d)(1)(D), "a motion to strike class allegations . . . may be addressed prior to the certification of a class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear." *In re Initial Pub. Offering Sec. Litig.*, 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008) (citing cases).

And as the court in *Chen-Oster* observed, a motion to strike class allegations may be appropriate where it "addresses issues 'separate and apart from the issues that will be decided on a class certification motion,'" and in that setting, it would not be "procedurally premature." *Chen-Oster*, 877 F. Supp. 2d at 117 (quoting *Rahman v. Smith & Wollensky Rest. Group, Inc.*, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)).

*Bankruptcy Jurisdiction Under Judiciary Code Section 1334*

Judiciary Code Section 1334 sets forth the grounds for federal jurisdiction over bankruptcy matters. Section 1334(a) provides that "[e]xcept as provided in [Section 1334(b),] the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a).

Section 1334(b) confers original but not exclusive jurisdiction upon district courts in all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Significantly, Section 1334(b) provides the bankruptcy courts with the ability to reach beyond the assets of a particular bankruptcy estate – as one court noted in considering a motion to dismiss a putative nationwide class, "[a] court no longer is restricted to dealing only

with assets under its control; it also has the ability to deal with other matters affecting debtors."

*Noletto v. Nationsbanc Mortgage Corp.* (*In re Noletto*), 244 B.R. 845, 849 (Bankr. S.D. Ala. 2000).

And Section 1334(e) confers exclusive jurisdiction upon the district and bankruptcy courts of the debtor's property, the property of the estate. 28 U.S.C. § 1334(e)(1). As the court observed in *In re Noletto*, Section 1334(e) "vests the 'home court' with the exclusive power to control and distribute property of the estate." *In re Noletto*, 244 B.R. at 854. But equally, "[Section] 1334(e) does not make the 'home court' the exclusive forum to hear debtor complaints regarding violations of the Bankruptcy Code." *Id. See Harker v. Wells Fargo Bank, NA*, 414 B.R. 243, 255-56 (Bankr. S.D. Ohio 2009) (finding that "[Section] 1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy courts strictly to *in rem* matters involving property of the debtor or property of the estate and not as a restriction on nationwide jurisdiction over claims for violations of provisions of the [Bankruptcy] Code, other federal statutory provisions, or other remedies").

### *Authority of the Bankruptcy Court Under Bankruptcy Code Section 105*

Bankruptcy Code Section 105 grants the bankruptcy court power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. It also provides that the court is not precluded from "*sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Id.*

While Section 105 is often viewed as a broad grant of authority, it is similarly well established that this Section also "limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'" *FDIC v. Colonial*

*Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

As the Second Circuit has observed:

> The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing.  This language "suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective."

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quoting 2 *Collier on Bankruptcy* ¶ 105.01[1] (15th ed. 2003)).

## Discussion

Wells Fargo's Motion To Strike Class Allegations calls for this Court to address two questions, and each is important.  First, as a threshold matter, is the motion premature?  Many courts have concluded that a motion to strike class allegations raises issues that should be addressed in the context of a motion to certify the class.

And second, does the Motion to Strike meet the high standard that courts have articulated and applied in deciding such motions before a motion to certify the class is made?  If the Court concludes that no matter what the evidence shows, a nationwide class cannot be certified here as a matter of law, then, as other courts have found in such circumstances, the class allegations in the Amended Complaint should be modified or stricken.  But if the law would permit the certification of a class, then the question of certification remains part of the picture, to be addressed anew by the Court on a motion to certify a class.  Viewed another way, if the Court concludes that it lacks the subject matter jurisdiction even to consider whether a nationwide class can be certified, no matter what the evidence may show, then the Motion to Strike should be granted.

The Court considers these questions in turn.

<u>*Whether Wells Fargo's Motion To Strike Class Allegations Is Premature*</u>

The first question to be addressed on this Motion to Strike is whether it is time to consider this matter at all – that is, is Wells Fargo's Motion to Strike premature?  Should these issues be decided now, or should they be deferred to the consideration of a motion to certify a class?

At the outset, it is worth noting that Federal Rule of Civil Procedure 23, made applicable to adversary proceedings by Bankruptcy Rule 7023, states that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  That is, as a threshold matter, the question of whether an action should be permitted to proceed as a certified class should be answered sooner, not later, in a case, and as soon as is "practicable."  Of course, the typical tool to accomplish this is a motion to certify a class under Rule 23, not a motion to strike class allegations.  And here, class discovery has not been completed and a motion to certify the class has not been made.

But another path to address whether a putative class action should be permitted to proceed in that form is a motion to strike the class allegations from the complaint.  Courts regularly observe that a motion to strike allegations of any type from a complaint under Rule 12(f) is "rarely grant[ed]."  *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (citing cases).

And when such motions are directed to class allegations, they raise additional issues:

> "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before

plaintiffs are permitted to complete the discovery to which they would otherwise
be entitled on questions relevant to class certification."

*Belfiore*, 94 F. Supp. 3d at 447 (quoting *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384,

404 (W.D.N.Y. 2010)).  *See Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 52 (E.D.N.Y.

2017) (stating that "motions to strike under Rule 12(f) are rarely successful").  Instead, "courts in

this Circuit have repeatedly held [that] a determination of whether the Rule 23 requirements are

met is more properly deferred to the class certification stage, when a more complete factual

record can aid the Court in making this determination."  *Greene*, 262 F. Supp. 3d at 79.

At the same time, courts agree that "the Court may consider a motion to strike class

allegations where it is clear that the putative class action claim will not proceed and/or the

motion to strike 'addresses issues separate and apart from issues that will be decided on a class

certification motion.'"  *Bank*, 2019 WL 1316966 at *4 (quoting *Chen-Oster*, 877 F. Supp. 2d at

117).  That is, "[t]o succeed on a motion to strike class allegations, a defendant must

'demonstrate from the face of the complaint that it would be impossible to certify the alleged

class regardless of the facts the plaintiffs may be able to obtain during discovery.'"  *Greene*, 262

F. Supp. 3d at 52 (quoting *Mayfield v. Asta Funding*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015)).

If that cannot be shown, then the motion is untimely at best, and perhaps unfounded.

Wells Fargo argues that this issue is ripe for adjudication even before class discovery

concludes and a motion to certify the class is filed, as "no amount of discovery will alter the

analysis of this purely legal question and the Federal Rules of Civil Procedure instruct courts to

address class scope issues as early as practicable."  Def's Mem. at 1. The Plaintiffs respond that

exactly the opposite situation is present, that Wells Fargo's Motion to Strike is premature, and

that a motion to strike class allegations "may only be entertained 'if the inquiry would not mirror

the class certification inquiry and if resolution of the motion is clear.'" Plfs' Opp. at 3 (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461-62 (S.D.N.Y. 2013)).

In order to determine whether the Motion to Strike addresses matters that are distinct from the issues to be decided on a class certification motion, this Court looks to the criteria for the certification of a class under Rule 23. Rule 23(a) provides that an action may be maintained as a class action "only if":

    (1)     the class is so numerous that joinder of all members is impracticable;
    (2)     there are questions of law or fact common to the class;
    (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As to numerosity, the Motion to Strike does not address how many putative class members there may be, either within this District or nationally, and similarly does not address whether the size of the class is so large that the joinder of all members as individual plaintiffs would be impracticable. Instead, Wells Fargo argues, in substance, that this Court lacks subject matter jurisdiction to consider the Plaintiffs' claims as to even a single debtor who received a bankruptcy discharge outside of this District. That is, the Motion to Strike addresses matters that are separate and distinct from this inquiry.

As to whether there are questions of law or fact common to the class that make the claims appropriate for class treatment, a closer question is presented. In the Motion to Strike, Wells Fargo argues that this Court lacks subject matter jurisdiction to consider a nationwide class, or any class that includes debtors who received a bankruptcy discharge outside of this District. To be sure, this would amount to a legal defense that would be common to the claims of those putative class members.

But the absence of subject matter jurisdiction is a very particular kind of defense.  It is well established that the question of jurisdiction should be addressed as early in a proceeding as possible.  *Key Mechanical Inc. v. BDC 56 LLC* (*In re BDC 56 LLC*), 330 F.3d 111, 118 (2d Cir. 2003) (the question of the bankruptcy court's subject matter jurisdiction "is a threshold determination that should be made at the earliest possible stage of the proceedings").  It is also a question of law.  As the court found in *In re Haynes*, "[w]hether the Court has subject matter jurisdiction over a nationwide class action to remedy alleged widespread breaches of debtors' discharges under Section 524(a) of the Bankruptcy Code is a question of law, therefore, extrinsic facts are not relevant."  *In re Haynes*, 2014 WL 3608891, at *2.  That is, in this context, the Motion to Strike raises matters that are both suitable and ripe for adjudication at this time.

The same is true for typicality, the third consideration under Rule 23.  Rule 23(a)(3) calls for the plaintiffs to show that their claims or defenses are "typical of the claims or defense of the class" in order for a class to be certified.  This ensures that the named representatives' claim and the claims of the class "'are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1986)).

And here again, Wells Fargo's Motion to Strike does not address whether this interrelationship is present, or whether the putative class representatives have claims or defenses that are atypical from those of other members of the alleged class – except perhaps as to the question of the defense of the lack of subject matter jurisdiction for those class members who received their bankruptcy discharges from outside this District.  This is, again, a very particular type of defense, and one that should be addressed "at the earliest possible stage of the

proceedings." *In re BDC 56 LLC*, 330 F.3d at 118.  That is, and here too, the Motion to Strike raises issues that are separate from the typicality inquiry, and that can be addressed at this time.

Finally, as to whether "the representative parties will fairly and adequately protect the interests of the class," the record does not indicate, or even suggest, that the Motion to Strike calls into question the adequacy of the putative class plaintiffs to serve as class representatives. *See* Fed. R. Civ. P. 23(a)(4).  Instead, the Motion calls for this Court to decide whether it may consider the question of certification of a nationwide class.  And if the Court concludes that it lacks the subject matter jurisdiction necessary even to consider that question, then, Wells Fargo argues, the nationwide class allegations should be stricken from the Complaint.

In sum, and as a threshold matter, the Court concludes that the issues presented by this Motion to Strike are "'separate and apart from issues that will be decided on a class certification motion.'"  *Bank*, 2019 WL 1316966 at *4 (quoting *Chen-Oster*, 877 F. Supp. 2d at 117).  The Court also concludes that the issues raise questions of law.  And the Court notes that Rule 23 states that the question of certification should be addressed at "an early practicable time after a person sues or is sued as a class representative."  Fed. R. Civ. P. 23(c)(1)(A).  For these reasons, and based on the entire record, the Court concludes that Wells Fargo's Motion to Strike is not premature, and may be considered at this time.

*Whether Wells Fargo Has Shown that the Plaintiffs' Class Allegations Should Be Stricken with Prejudice*

The next question to be addressed on this Motion to Strike is whether Wells Fargo has shown that a nationwide class cannot be certified by this Court as a matter of law – that is, that it would be "impossible to certify the alleged class."  *Greene,* 262 F. Supp. 3d at 52.

Wells Fargo argues that this Court lacks the subject matter jurisdiction to adjudicate a discharge injunction violation claim predicated on a discharge order that was not entered in this

District.  It argues that this Court should follow the appellate and lower court decisions outside this District and Circuit that have concluded that the power to enforce the statutory discharge injunction lies only in the particular bankruptcy court or district that issued the debtor's discharge, and strike the Plaintiffs' allegations that they represent a putative nationwide class. *See* Def's Mem. at 3-5 (citing cases).

The Plaintiffs respond that there can be no doubt that a bankruptcy court has the subject matter jurisdiction to consider a discharge injunction violation claim, and equally plainly, that a bankruptcy court may entertain a class action.  For these reasons alone, they assert, Wells Fargo's Motion to Strike should be denied.  Plfs' Opp. at 2.

The Plaintiffs also argue that, as the bankruptcy court found in *In re Haynes*, a discharge is "fundamentally different from other specific, judge-crafted injunctions or orders," and point to cases within and outside this Circuit that have reached the same conclusion.  Plfs' Opp. at 6.  *See* Plfs' Opp. at 6-7 (citing cases).  They also point to nationwide classes that have been certified within and outside the Second Circuit for alleged violations of the discharge injunction, including by the bankruptcy court in *In re Haynes*, and urge the Court to follow the same reasoning in denying Wells Fargo's request for relief.  Plfs' Opp. at 5-6 (citing cases).  And they describe this as "a matter of comity not a question of jurisdiction."  Plfs' Opp. at 6 (citing *Gray*, 985 F. Supp. at 632-34).

As a starting point, and as the Supreme Court has observed, there can be no doubt that the court that issues an injunction has the authority to enforce it.  As the Court stated, "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction."  *Thomas v. General Motors Corp.*, 522 U.S. 222, 236 (1998).  *See In re Debs*, 158 U.S. at 594-95.  And as the Second Circuit has found, "[v]iolation of an injunctive order is

cognizable in the court which issued the injunction, regardless of where the violation occurred." *Stiller v. Hardman,* 324 F.2d 626, 628 (2d Cir. 1963). But as noted, this is a starting point, and does not answer the question whether the issuing court may also entertain a request for broader relief, or whether *only* the issuing court may determine whether a violation has occurred.

One piece of this picture is the nature of the particular "injunction" at issue in this action. The discharge injunction is a statutory injunction, and a product of the Bankruptcy Code itself. It is created by Bankruptcy Code Section 524(a), which states that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). As the bankruptcy court explained in *In re Haynes*, "the bankruptcy discharge order is a form, a national form, which is issued in every case when there is, in fact, a discharge. By statute, in [Section] 524(a)(2), it operates as an injunction . . . it is not a handcrafted order." *In re Haynes*, 2014 WL 3608891, at *8. To the same effect, the court observed, "[t]here is a fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in Section 524(a) to support the discharge under [Bankruptcy Code] Section 727." *In re Haynes*, 2014 WL 3608891, at *8. *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445-46 (1st Cir. 2000) (holding that "when dealing, as here, with violation of a purely statutory order," such as the discharge injunction imposed by Section 524, it is not necessary to return to "the court that issued the original discharge order").

Another piece of the picture is the source of the bankruptcy court's authority to enforce its own orders and, more generally, to enforce the provisions of the Bankruptcy Code, including the discharge injunction. One source of federal court authority is the All Writs Act. The All

Writs Act states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). And some courts have looked to that Act to conclude that only the court that issued a debtor's bankruptcy discharge should have the power to enforce that injunction.

Wells Fargo points to the Eleventh Circuit's decision in *In re Alderwoods* and other decisions, and argues that, following that court's reasoning, "this Court is without jurisdiction to enforce compliance with injunctions issued by other courts." Def's Reply at 4. *See* Def's Mem. at 4 (citing cases). In *In re Alderwoods*, the court addressed whether an alleged contempt of a Chapter 11 plan confirmation order entered in the District of Delaware could be addressed in the bankruptcy court in the Southern District of Florida:

> [T]he court that enters an injunctive order retains jurisdiction to enforce its order. In this respect, a bankruptcy court is no different than any other federal court, which possesses the inherent power to sanction contempt of its orders. The bankruptcy court that confirms a reorganization plan thus enters an injunctive order – the confirmation order – the violation of which it can sanction.

*Alderwoods*, 682 F.3d at 970 (citations omitted). And the court separately noted that "the discharge injunction itself is like an All Writs Act injunction issued 'in aid of' a court's jurisdiction . . . in that the discharge injunction is 'in aid of' the purpose of the Bankruptcy Code." *Alderwoods*, 682 F.3d at 972 n.24 (quoting 28 U.S.C. § 1651).

But there is an additional source of federal court authority available under the Bankruptcy Code, in the form of Section 105(a). Section 105(a) provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" – including, presumably, the statutory discharge injunction that is set forth in Bankruptcy Code Section 524(a). 11 U.S.C. § 105(a).

And here again, the bankruptcy court's decision in *In re Haynes* provides guidance. Considering first the All Writs Act, the court observed that "[v]ery clearly, that statute is court-specific, referring to 'their respective jurisdictions,' or the respective jurisdictions of the individual courts whose orders are to be enforced." *In re Haynes*, 2014 WL 3608891, at *8.

By contrast, Section 105(a) "is quite different":

> Although modeled on the All Writs Act, . . . [Section 105] does not refer to aiding the Court's own jurisdiction. . . . the legislative history of this section, in H.R. Rep. 95-595, states that, among other things, Section 105 is intended to "cover any powers traditionally exercised by a bankruptcy court that are *not* encompassed by the all writs statute." (Emphasis added.) The statutes are different, in other words.

*In re Haynes*, 2014 WL 3608891, at *8.

The court continued:

> I believe it is a mistake to rely upon All Writs Act cases to hold that a bankruptcy court has power under the applicable statute only to enforce its own orders, as opposed to the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular.

*Id*. That is, the authority granted to bankruptcy courts by Section 105 is – by design – broader than the authority granted to federal courts in the All Writs Act.

A third piece of the picture is the source of the Court's jurisdiction here. Wells Fargo argues that, as several courts have concluded, "only the bankruptcy court that issued a particular discharge injunction may issue a contempt order to enforce that injunction." Def's Mem. at 4 (citing cases). Here, the cause of action arises under the Bankruptcy Code, and specifically, under Bankruptcy Code Sections 727, 524(a)(2), and 105(a). As a consequence, for purposes of this adversary proceeding, Judiciary Code Section 1334(b) is the source of this Court's jurisdiction, because the claim is a "civil proceeding[] arising under title 11." 28 U.S.C. § 1334(b). Indeed, as the court observed in *In re Haynes*, "there [are] few matters as 'core' to the

basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code." *In re Haynes*, 2014 WL 3608891, at *7.

So, what does this mean for this Court's subject matter jurisdiction to consider the question of whether a nationwide class should be certified here?

At the outset, the Court considers whether it has subject matter jurisdiction to consider the Plaintiffs' claims, and if so, whether this Court's subject matter jurisdiction is somehow diminished by the Plaintiffs' request to proceed as representatives of a nationwide class. It is axiomatic that this Court has subject matter jurisdiction to consider the discharge injunction violation claims of the named plaintiffs, who filed Chapter 7 bankruptcy cases in this District, because these are core matters. And as the Plaintiffs note, it is equally clear that the Court has the authority to entertain a request to certify an action as a class action. Class actions are permitted by Federal Rule 23, and that Rule is made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 7023. That is, neither Bankruptcy Rule 7023 nor Federal Rule 23 takes away from this Court's core jurisdiction to consider alleged discharge violation claims.

And bankruptcy courts have certified class actions to address a range of core bankruptcy claims in several circuits, including the Second Circuit. *See, e.g.*, *Sheffield v. HomeSide Lending, Inc.* (*In re Sheffield*), 281 B.R. 24 (Bankr. S.D. Ala. 2000) (certifying nationwide class for creditor's failure to disclose post-petition, pre-confirmation attorney fees in its proofs of claim); *Noletto v. NationsBanc Mortg. Corp.* (*In re Noletto*), 281 B.R. 36 (Bankr. S.D. Ala. 2000) (same); *Harris v. First Union Mortg. Corp.* (*In re Harris*), 280 B.R. 876 (Bankr. S.D. Ala. 2001) (same). *See also Chiang v. Neilson* (*In re Death Row Records, Inc.*), 2012 WL 952292 at *12 (9th Cir. B.A.P. 2012) (finding proper the nationwide certification of a class action as to "the turnover, declaratory and injunctive relief claims" noting that they "are not solely *in rem*

28

claims"); *In re Krause*, 414 B.R. at 255-56 (finding that "1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy courts strictly to *in rem* matters involving property of the debtor or property of the estate and not as a restriction on nationwide jurisdiction over claims for violation of provisions of the Code, other federal statutory provisions, or other remedies that might be available to debtors and trustees"); *Sims v. Capital One Fin. Corp.* (*In re Sims*), 278 B.R. 457, 486 (Bankr. E.D. Tenn. 2002) (concluding that "the better reasoned view is that there is bankruptcy subject matter jurisdiction over class action claims invoking substantive bankruptcy rights"); *Bank United v. Manley*, 273 B.R. 229, 244-45 (N.D. Ala. 2001) (permitting nationwide class certification, noting that "the idea that statute might preclude a bankruptcy court from adjudicating an issue based solely upon where the issue is filed suggests questions of proper venue, as opposed to subject matter jurisdiction").

Other courts have similarly concluded that the bankruptcy court's subject matter jurisdiction is adequate to permit the consideration of whether a nationwide class should be certified. For example, as one court found in denying a motion to dismiss a putative nationwide class action based on the defendant's alleged practice of misallocating payments and collecting unauthorized fees and costs, "[Judiciary Code Section] 1334(b) grants subject matter jurisdiction over any debtor claims that fall within the court's 'related to,' 'arising in,' or 'arising under' jurisdiction, regardless of where the claimant's bankruptcy petition was filed." *Cano v. GMAC Mortgage Corp.* (*In re Cano*), 410 B.R. 506, 551 (Bankr. S.D. Tex. 2009).

And as another court observed in denying a motion to dismiss putative nationwide class action to enforce the Section 524 discharge injunction, "[t]he Court has the power to provide all of the relief requested." *Vick v. NCO Financial Systems, Inc.*, 2010 WL 1330637, at *4 (E.D. Tex. March 15, 2010), *report and recommendation aff'd*, 2010 WL 1328830 (E.D. Tex. Mar. 30,

2010).  *See, e.g., Rojas v. Citi Corp Trust Bank FSB* (*In re Rojas*), 2009 WL 2496807 at *10

(Bankr. S.D. Tex. Aug. 12, 2009) (denying motion to dismiss putative nationwide class action

based on defendant's alleged practice of filing false proofs of claims and rejecting argument that

the bankruptcy court lacks subject matter jurisdiction to consider a nationwide class).

And finally, nationwide settlements of class actions asserting discharge injunction

violations have been approved by bankruptcy and district courts in several cases within the

Second Circuit.  *See Anderson v. Capital One Bank (USA), N.A.,* 19-cv-03981-NSR, at ECF No.

20 (S.D.N.Y. Sept. 11, 2019); *Anderson v. Capital One Bank (USA), N.A.,* 15-08342-RDD, at

ECF No. 99 (Bankr. S.D.N.Y. Jan. 7, 2021); *Haynes v. Chase Bank U.S.A., N.A.*, 18-cv-03307-

VB, at ECF No. 19 (S.D.N.Y. Aug. 24, 2018); *Haynes v. Chase Bank U.S.A., N.A.*, 13-08370-

RDD at ECF No. 133 (Bankr. S.D.N.Y. Sept. 27, 2018); *Echevarria v. Bank of America Corp.*,

17-cv-08026-VB at ECF No. 23 (S.D.N.Y. Mar. 14, 2018); *Echevarria v. Bank of America

Corp.*, 14-08216-RDD at ECF No. 121 (Bankr. S.D.N.Y. Mar. 15, 2018).  While each of these

cases reached a consensual outcome, that consensus cannot create subject matter jurisdiction

where it is otherwise lacking.  As the Second Circuit has observed, "[j]urisdiction cannot be

created by the consent of the parties."  *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138

(2d Cir. 2012).

Viewed another way, this Court's subject matter jurisdiction to consider these Plaintiffs'

claims, including their request to proceed as class representatives in a Rule 23 class, should not

be limited by the scope of that request – including a request to proceed as a nationwide class.  If

the Plaintiffs meet their burden on a motion to certify a class, then they will prevail, and an

appropriate class will be certified – and if they do not, then a class will not be certified.

Next, and alternatively, the Court considers whether it has subject matter jurisdiction to consider the Plaintiffs' request to certify a nationwide class in light of the cases that have found that "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction." *Thomas*, 522 U.S. at 236. Wells Fargo argues that the basis for enforcing the discharge under Bankruptcy Code Sections 524(a)(2) and 727 is the individual court's discharge order, and only the issuing court has the power to enforce that injunction. And this, it argues, means that this Court cannot certify a nationwide class, and therefore, lacks subject matter even to consider a motion to that effect. Def's Mem. at 3.

This Court disagrees, for several reasons. Many of the foundational cases upon which Wells Fargo relies, beginning with the Supreme Court's decision in *In re Debs*, address injunctions crafted by particular courts to address the particular circumstances of a particular case.

In *In re Debs*, the Court reviewed an application for a writ of habeas corpus brought by petitioners, some of whom were officers of a railway union, challenging their imprisonment in the county jail for contempt of a back-to-work injunction issued in the context of the Pullman Strike. Represented by Clarence Darrow, petitioner Eugene Debs challenged the legality of the strike injunction and his incarceration for violating it. In a unanimous decision, the Supreme Court ruled that the strike injunction was a legitimate exercise of the federal government's role in regulating interstate commerce. And the Court confirmed that "the power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court." *In re Debs,* 158 U.S. at 594. *See On this day, the Pullman Strike changes labor law*, Interactive Constitution (May 11, 2020), https://constitutioncenter.org/interactive-

constitution/blog/on-this-day-the-pullman-strike-changes-labor-law.  The Court contrasted this

with the criminal law, observing that "[i]n brief, a court enforcing obedience to its order by

proceedings for contempt is not executing the criminal laws of the land, but only securing to

suitors the rights which it has adjudged them entitled to."  *In re Debs*, 158 U.S. at 596.  This

setting is far removed indeed from the question of whether a court in one federal judicial district

may consider whether the statutory bankruptcy discharge injunction has been violated by a

defendant in another federal judicial district.

And in *Thomas v. General Motors Corp.*, the Supreme Court considered whether a

Missouri court was bound by a consensual stipulation and injunction entered in a Michigan state

court action between General Motors and a former employee in which the former employee

agreed to be barred from testifying as a witness in any action against General Motors in any

court, in light of the Constitution's Full Faith and Credit clause.  Here again, the injunction at

issue was individually crafted – and by the parties, in the form of a stipulation to be approved by

the court – and tailored to the circumstances in the case.  The question before the Court, as

framed by Justice Ginsburg, was "the authority of one State's court to order that a witness'

testimony shall not be heard in any court of the United States."  *Thomas*, 522 U.S. at 225-26.

The Court observed that the Full Faith and Credit clause requires that "[a] final judgment

in one State, if rendered by a court with adjudicatory authority over the subject matter and

persons governed by the judgment, qualifies for recognition throughout the land. . . . in other

words, the judgment of the rendering State gains nationwide force."  *Thomas*, 522 U.S. at 233.

And the Court noted that "injunctions are ordinarily enforced by the enjoining court, not by a

surrogate tribunal."  *Thomas*, 522 U.S. at 240.  But the Court concluded that the injunction

entered in the Michigan state court simply could not "dictate to a court in another jurisdiction

that evidence relevant in [a case pending there] – a controversy to which Michigan is foreign – shall be inadmissible." *Thomas*, 522 U.S. at 239.  That is, as in *In re Debs*, neither the injunction at issue nor the question presented to the Court serves as a close analogy to the circumstances present here.

When viewed in the light of these examples of party- and court-crafted and case-specific injunctions, it is clear that the statutory discharge injunction that is found in the Bankruptcy Code is an utterly different directive.  This Court is not aware of an indication in any reported case that a bankruptcy court tailors that statutory discharge injunction to the circumstances of a particular case, or that one bankruptcy court or district as opposed to another has any special expertise in interpreting the text and terms of the statute or crafting that form of order.  To the contrary, the discharge of a debtor in a Chapter 7 bankruptcy case is generally accomplished by the entry of Official Bankruptcy Form B 318.  This official form is approved by the Judicial Conference of the United States, and must be used under Bankruptcy Rule 9009.  *See* Official Bankruptcy Form Number B 318, https://www.uscourts.gov/forms/bankruptcy-forms/discharge-debtor-chapter-7-case.  As the court found in *In re Haynes*, "[t]here is . . . a fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in Section 524(a) to support the discharge."  *In re Haynes*, 2014 WL 3608891, at *8.

And the cases cited by Wells Fargo that arise in the context of motions to compel arbitration, including the Second Circuit's decision in *In re Anderson*, do not require a different result.  Wells Fargo observes that in *In re Anderson*, the Second Circuit "decisively rejected" the argument that the statutory nature of the discharge injunction somehow took it out of the realm of matters of interpretation that had to be decided by the issuing court.  As the Second Circuit

found, "the bankruptcy court alone possesses the power and unique expertise to enforce [the discharge injunction]." *In re Anderson*, 884 F.3d at 390.  And the court observed, "[t]he bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated." *In re Anderson,* 884 F.3d at 390-91.

But it is worth noting the context of the Second Circuit's decision – because of course, the question before the court provides the framework for understanding the answer that the court provides in its decision.  In *In re Anderson*, the defendant sought to compel arbitration of asserted discharge injunction violation claims.  And there, the court concluded that it would undermine the goals and objectives of the Bankruptcy Code, and more generally, the bankruptcy system, for such a fundamental question to be determined not by a court, but by an arbitrator.

As the Second Circuit found:

> The successful discharge of debt is not merely important to the Bankruptcy Code, it is its principal goal.  An attempt to coerce debtors to pay a discharged debt is thus an attempt to under the effect of the discharge order and the bankruptcy proceeding itself . . . the issue strikes at the heart of the bankruptcy court's unique power to enforce its own orders.

*In re Anderson,* 884 F.3d at 386.

The Second Circuit also found that the stakes were high indeed.  It stated that "arbitration of a claim based on an alleged violation of Section 542(a)(2) would 'seriously jeopardize' a particular core bankruptcy proceeding.'" *In re Anderson,* 884 F.3d at 389-90 (quoting *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. and Indem. Assoc., Inc.* (*In re U.S. Lines, Inc.*), 197 F.3d 631, 641 (2d Cir. 1999)).  And it noted that "[e]nforcement of the arbitration agreement in this case would interfere with the fresh start bankruptcy promises debtors, which would create an inherent conflict with the Code." *In re Anderson,* 884 F.3d at 390.

And finally, the Second Circuit placed the issue in the context of bankruptcy courts and the bankruptcy system generally, not just the bankruptcy court where the debtor's discharge order was entered. The court found that "enforcement of injunctions is a crucial pillar of the powers of *the bankruptcy courts* and central to the statutory scheme." *Id.* (emphasis added). And it observed:

> Though the discharge injunction itself is statutory and this a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated. Congress afforded *the bankruptcy courts* wide latitude to enforce their own orders, specifically granting these specialty courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

*In re Anderson*, 884 F.3d at 390-91 (quoting 11 U.S.C. § 105(a)) (emphasis added).

That is, in *In re Anderson*, the Second Circuit identified several key aspects of the bankruptcy process, including the protection provided to a debtor by the statutory discharge injunction and the debtor's fresh start, and determined that remitting these issues to an arbitral forum, rather than a bankruptcy court, would "strike[] at the heart" of the bankruptcy process. *In re Anderson*, 884 F.3d at 386. And it addresses these issues in the context of bankruptcy courts and the bankruptcy system, not solely a single bankruptcy court or district. The court did not address, and did not need to address, whether the issuing judge, or district, or circuit set the boundary for the bankruptcy court's subject matter jurisdiction in the matter before it.

This same reasoning was echoed and expanded upon by another case cited by Wells Fargo, the Fifth Circuit's decision in *In re Crocker*. There, the court "adopt[ed] the language of the Second Circuit that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold 'respect for judicial process.'" *In re Crocker,* 941 F.3d at 216 (quoting *In re Anderson,* 884 F.3d at 391). As the Fifth Circuit observed, "only the bankruptcy

court issuing the discharge" has the authority "to enforce the injunction through contempt." *In re Crocker*, 941 F.3d at 215.

To be sure, and as Wells Fargo notes, in *In re Crocker*, the Fifth Circuit interpreted *In re Anderson* to call for a "return[] to the issuing bankruptcy court." *In re Crocker,* 941 F.3d at 216. *See* Def's Ltr. at 1. The Plaintiffs respond that the Fifth Circuit's analysis arises in a different context than the Second Circuit's decision in *In re Anderson*, does not address the question of class certification, and overlooks or misconstrues certain of the Bankruptcy Rules and the Bankruptcy Code's legislative history.

But at least this much is clear. In *In re Anderson*, the Second Circuit addressed the question of a choice of forum as the choice between a bankruptcy court and the federal courts generally, on the one hand, and an arbitration proceeding, on the other. It was not a choice between the bankruptcy court or district in which the discharge was entered, as opposed to a different bankruptcy court. And in *In re Crocker*, the Fifth Circuit addressed a different question – "[m]ay a bankruptcy court other than the one that granted the discharge enforce the [discharge] injunction?" *In re Crocker*, 941 F.3d at 211. To be sure, the *Crocker* court found guidance in the Second Circuit's decision in *In re Anderson*. But that does not change the question that was before the court in *in re Anderson*, or the scope or consequences of the Second Circuit's ruling.[1]

---

[1] The parties have filed letters addressing the Second Circuit's decision in *Belton v. GE Capital Retail Bank*, 961 F.3d 612 (2d Cir. 2020), *cert. denied*, 2021 WL 850624 (U.S. Mar. 8, 2021), where the court affirmed the district and bankruptcy court's conclusion that "the alleged violation of a bankruptcy court discharge order" is not an arbitrable dispute because, as the *Anderson* court found, "arbitration was in 'inherent conflict' with enforcement of a discharge injunction." *Belton*, 961 F.3d at 615 (quoting *In re Anderson*, 884 F.3d at 390). There, the court also stated that "we have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings, and neither our decision today nor *Anderson* should be read as a tacit endorsement of such." *Belton*, 961 F.3d at 617. And the court stated that it would "leave for another day the issue of class certification." *Belton*, 961 F.3d at 618.

Other cases cited by Wells Fargo look to the All Writs Act as the basis for a federal court's authority to enforce an injunction.  As the court found in *In re Haynes*, the All Writs Act "[v]ery clearly . . . is court-specific, referring to 'their respective jurisdictions,' or the respective jurisdictions of the individual courts whose orders are to be enforced."  *In re Haynes*, 2014 WL 3608891, at *8.

But again, this is not an obstacle to this Court's considering the question of whether a nationwide class should be certified here, because it is not the basis for this Court's ability to proceed.  As the court observed in *In re Haynes*, bankruptcy courts may also look to Section 105(a), which is "modeled on the All Writs Act, . . . [but] does not refer to aiding the Court's own jurisdiction."  *In re Haynes*, 2014 WL 3608891, at *8.  And indeed, Congress recognized that Section 105 was necessary as a complement to the All Writs Act because "the legislative history of this section, in H.R. Rep. 95-595, states that, among other things, Section 105 is intended to 'cover any powers traditionally exercised by a bankruptcy court that are *not* encompassed by the all writs statute.'"  *In re Haynes*, 2014 WL 3608891, at *8.  For these reasons, the *Haynes* court concluded that the All Writs Act is not a limitation on other grounds for a bankruptcy court to exercise its jurisdiction, and that "it is a mistake to rely upon All Writs Act cases to hold that a bankruptcy court has power under the applicable statute only to enforce

---

This Court notes that in *Belton*, as the Plaintiffs observe, "[t]he issue of whether a class action would be allowed in such a circumstance was not before the Court and was not briefed."  Plfs' Belton Ltr. at 1.  And the Court notes that here, the question to be decided is whether the Plaintiffs' allegations that they represent a putative nationwide class should be stricken from the Complaint.  Wells Fargo's Motion to Strike does not address whether a nationwide class *should* be certified; rather, it addresses whether that question can even be decided here.  That is, this Court too leaves the question of certification for another day.

its own orders, as opposed to the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular." *Id.*

Two additional arguments have been cited by courts in addressing these issues, and are worthy of note.  One argument is "premised upon the notion that the Court's exercise of jurisdiction over debtors other than the debtor before it, or, in some courts, the debtors in its district, will not lie because that determination does not affect the lead plaintiff's [bankruptcy] estate . . . and there is no 'related to' jurisdiction in respect of other debtor class members' claims under [Judiciary Code] Section 1334(b)."  *In re Haynes*, 2014 WL 3608891, at *6.

This Court agrees that cases reaching this conclusion are "premised on a misreading of the statutory basis for bankruptcy jurisdiction:"

> While it is true that a substantial portion of bankruptcy jurisdiction is *in rem*, that is, jurisdiction over the debtor's estate wherever located, it is not the only basis for bankruptcy jurisdiction, which, under 28 U.S.C. Section 1334(b), extends to "all civil proceedings arising under title 11," including under 11 U.S.C. Sections 524 and 727.  In fact, . . . these fundamental, if not *the* fundamental, provisions of the Bankruptcy Code have nothing to do with the debtor's estate or *in rem* jurisdiction.  They have everything to do with prohibiting the collection of *in personam* debts that, before the bankruptcy discharge, were owed by the debtor.

*In re Haynes*, 2014 WL 3608891, at *6.

Simply put, these claims "arise under" the Bankruptcy Code, are separate and distinct from any *in rem* basis for the bankruptcy court's jurisdiction, and go to the heart of one of the fundamental protections of the bankruptcy system – that is, the opportunity for a fresh start.  As the Second Circuit found in the context of an asserted class action, "where the putative class members are all allegedly victims of willful violations of the discharge injunction issued by the bankruptcy court there is a continuing disruption of the debtors' ability to obtain their fresh starts."  *In re Anderson*, 884 F.2d at 391.  And as this Court has recognized, "[o]ne of the

fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a 'fresh start.'" *McKenzie-Gilyard,* 388 B.R. at 480 (citing *Marrama,* 549 U.S. at 367).

And separately, some courts have concluded that a bankruptcy court cannot entertain a nationwide class action to address an alleged discharge injunction violation on jurisdictional grounds, based on Judiciary Code Section 1334(e) and the limitations of a court's *in rem* jurisdiction. This Section provides that "the district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction – (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). *See, e.g., Williams v. Sears Roebuck and Co.,* 244 B.R. 858, 866 (Bankr. S.D. Ga. 2000) (observing that "[t]he function of § 1334(e) is clear – to insure that only one court administers the bankruptcy estate of a debtor" and that "[a] procedural rule such as Rule 23 authorizing class actions, of course, cannot be read as enlarging the limited jurisdictional grant of § 1334"); *Bessette v. Avco Fin. Servs., Inc.,* 279 B.R. 442, 449 (Bankr. D.R.I. 2002) (limiting class to members within the District of Rhode Island, because "[w]hile this Court can issue contempt findings for persons or entities subject to an order of this Court, it cannot issue orders for parties not within its authority").

But here again, this argument misses the mark, and misconstrues the essential nature of the relief that is sought here. The Plaintiffs seek, for themselves and for the putative nationwide class, neither more nor less than the benefit of their bankruptcy discharges. And under Bankruptcy Code Section 524(a), the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*." 11 U.S.C. § 524(a)(2) (emphasis added). Their claims do not concern "property of the estate, as of the commencement

39

of the case," or "property of the estate," as addressed by Judiciary Code Section 1334(e)(1).  As the bankruptcy court observed in *In re Haynes*, "these fundamental, if not *the* fundamental, provisions of the Bankruptcy Code have nothing to do with the debtor's estate or *in rem* jurisdiction.  They have everything to do with prohibiting the collection of *in personam* debts that, before the bankruptcy discharge, were owed by the debtor."  *In re Haynes*, 2014 WL 3608891, at *6.

Finally, the Court considers the Supreme Court's ruling in *Taggart*.  In *Taggart*, the Supreme Court observed that "the statutes specifying that a discharge order 'operates as an injunction,' and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, bring with them the 'old soil' that has long governed how courts enforce injunctions."  *Taggart*, 139 S. Ct. at 1801 (quoting 11 U.S.C. § 524(a)(2) and § 105(a)).  And it found that "as part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction."  *Taggart*, 139 S. Ct. at 1801.

As the Supreme Court explained, this "old soil" is the source of "traditional standards" as to when a finding of civil contempt may lie, and leads to the conclusion that a court may hold a creditor in civil contempt for violating a debtor's discharge if there is "*no fair ground of doubt* as to whether the order barred the creditor's conduct."  *Taggart*, 139 S. Ct. at 1799.  That is, *Taggart* addressed the nature of the creditor's conduct and the scope of the debtor's discharge, and held that a finding of civil contempt may issue only where the question of the creditor's violation is decisively answered in the affirmative – where there is "no fair ground of doubt" as to the existence of the violation.  And the "old soil" informs the question of intent, not the question of whether a bankruptcy court has subject matter jurisdiction to decide whether to

40

certify a nationwide class.  While *Taggart* surely has a role to play in determining a creditor's liability, it simply does not address whether this question may be considered by a court solely in an individual debtor's case, or in a district-wide class, or, as here, in a putative nationwide class.

### Conclusion

Based on the entire record and for the reasons stated herein, the Court finds that Wells Fargo has not shown that the Plaintiffs' allegations that they seek to be certified as representatives of a putative nationwide class designation should be stricken from the Amended Complaint.  The question of whether a nationwide class, or any class, should be certified in this action is reserved for another day, to be considered upon the making of a motion to certify a class by the Plaintiffs.

For these reasons, Wells Fargo's Motion To Strike Class Allegations is denied.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**April 7, 2021**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**